Lear *v.* Chouteau et al.

---

FERDINAND LEAR, Plaintiff in Error, *v.* PIERRE CHOUTEAU, Jr., JAMES HARRISON and FELIX VALLE, Defendants in Error.

· ERROR TO ST. CLAIR.

A resulting trust can only arise from the fact, that a purchase is made in the name of one, while the purchase money belongs to another.

The Statute of Frauds in reference to parol contracts for the sale of lands, if relied on as a defense, must be pleaded, otherwise it will be held to be waived.

A court of equity will not decree the specific performance of every contract, although fairly and even understandingly made.

In order to induce a court of equity to enforce specifically a contract, it must be founded on a good consideration—it must be reasonable, fair and just.

THIS was a bill in chancery, filed by the defendants in error to compel a conveyance to them of certain coal and coal lands, and certain privileges connected therewith, purchased by the plaintiff in error, defendant below, as alleged by the said complainants, as trustee for them and for their use.

*David W. Hill,* one of the attorneys for complainants, tes-

23    39
37a  292
| 23   39 |
| 142  186 |
| 142  329 |
| 23   39 |
| 148   19 |
23   39
179  194
23   39
108a 4  22
23   39
210  4549
211  275
112a 4  66
23   39
113a 2575

tified, that he took down the notes from which exhibit A was drawn by B. A. Hill, from the directions and statements of Charles P. Chouteau and the defendant, when together in his office. He read over exhibit A to Lear, and said he believed it embodied the whole agreement and all that was necessary; Lear said he believed it did. Defendant was slightly deaf. This witness states that at the time when the agreement (exhibit A,) was drawn, " defendant expressly desired that some time should be limited in it, in which he should be required to commence operations, and they fixed upon a month; that is to say, this is what I understood as Lear's wish at the time."

This agreement (exhibit A,) contained a clause that it " should not take effect until after one month's notice given to said Lear, by Chouteau, Harrison and Valle to that effect, unless the parties should mutually consent to a shorter time for the commencement of operations."

The agreement was never signed by Lear. The remaining essential facts of the case will be found in the opinion.

The cause was tried by UNDERWOOD, Judge.

KOERNER & NILES, JOHN M. KRUM, and E. W. DECKER, for Plaintiff in Error.

G. TRUMBULL, for Defendants in Error.

CATON, C. J. There is no pretense for a resulting trust in this case. The interests in the lands in controversy were purchased by Lear not for cash down, but on time, to be paid for as the coal should be taken out, and Lear gave his personal obligations for the payment of the purchase money, and took whatever title was taken to himself. The agreement under which these purchases were made could not create a resulting trust, which can alone arise from the fact, that a purchase is made in the name of one, while the purchase money belongs to another. Here no part of the purchase money has been paid, and hence it is impossible that a resulting trust could arise.

The subject matter of this controversy is coal in lands, with the right to take and remove it therefrom. This is an interest in lands, and by the statute of frauds all contracts concerning it are required to be in writing, in order to be binding on the par ties, yet the well settled rules of both law and equity require that those who would avoid the obligations of such parol contracts by reason of the statute, must set up the statute by way of defense, or rely upon it by pleading in some way, and if they will not do this, they thereby impliedly waive the objection, that the contract was not in writing. Here the defendant has not

relied upon the statute in his answer, and it is now too late for him to say that it was not in writing. We must now consider this case, as if no such statute existed.

We shall assume, for the purposes of this decision, that the testimony of Mr. Hill shows that Lear assented to the paper exhibit A, as containing the terms of the agreement between the parties under which these lands were purchased, and for which he agreed to assign the contracts to the complainants, while we confess that we are by no means satisfied that such admission was understandingly made, or that Mr. Lear fully understood the effect of the paper. But we shall place our decision upon the terms and provisions of the paper as exhibited. It shows such an agreement as no court of chancery ever ought to enforce specifically, even though the defendant agreed to all its terms. It is not every contract, although fairly and even understandingly made, which a court of chancery will decree to be specifically performed. Shall we compel Lear to assign these purchases for the consideration of the covenants and obligations which the complainants propose to assume by the execution of this paper? It is a paper by which Lear agrees to superintend the opening and working these mines and to devote all his time thereto, for which services the complainants are to pay him seventy dollars per month till the mines are open, and after that, two mills per bushel for the coal which shall be taken out and marketed. Even if the contract stopped here, we cannot say that it should be specifically performed. This contract makes no provision for the payment of the purchase money. By the original contracts to be assigned by Lear to the complainants, Lear had bound himself in personal covenants to pay fifteen dollars per acre for all the coal in all these lands, and this paper leaves him still obliged to pay this rent or purchase money. Was such the intention of the parties? Did Lear intend to bind himself still to pay this money? Probably not, although such is the effect of the papers which we are called upon to compel him to execute. But the last clause in this exhibit 'A,' leaves it without the least particle of value to Lear, and places him entirely at the mercy of the complainants. It is this: "This agreement is not to take effect until after one month notice given to said Lear by Chouteau, Harrison & Valle to that effect, unless the parties hereto shall mutually consent to a shorter time for the beginning of operations." Here then the contract which constitutes the sole consideration for these assignments is to remain a dead letter, till the complainants choose to impart to it vitality by giving the notice specified. Till then, it is not to take effect; it is to have no existence; it is as if it had never been written, except that Lear is forever bound to hold himself

Lear *v.* Chouteau et al.

in readiness on one month's notice to enter into the service of the complainants on the terms specified. Of what worth is such a paper to Lear—what consideration is it for the assignment of these purchases, which had cost him, no doubt, considerable labor and scientific skill as a collier, as the case shows, and also for which he had executed his obligations amounting in the aggregate to a very large sum ? Nothing ; absolutely nothing, and even worse than nothing, for by it his hands would be tied up so that he could not engage in other enterprises of a permanent character, but must ever stand with his hands folded, awaiting the pleasure of these gentlemen. In such a contract as this there is neither reciprocity, fairness nor good conscience, and if the defendant was simple enough to consent to such an agreement, a court of equity will not compel him to execute it specifically, but leave the parties to their remedies at law, which has no conscience and knows no mercy. In order to induce a court of equity to enforce specifically a contract, it must be founded on a good consideration, it must be reasonable, fair and just. If its terms are such as our sense of justice revolts at, this court will not enforce it, though admitted to be binding at law. Such is the character of this agreement—there is not one reciprocal feature in it. Lear is required to perform everything on his part, and binds himself to the performance of future acts unconditionally, while the complainants are absolutely bound to nothing. Some men delight in holding all the strings in their own hands—holding others entirely at their mercy, that they may make a merit of justice and call it generosity, or crush down their victim with a heavy hand and plead the letter of the bond for a justification. Such traits of character and such transactions are as abhorrent to equity as they are detestable to the common appreciation of mankind, and will look in vain for favor at the hands of this court. We will not say that these complainants are fully obnoxious to this censure, but this transaction looks very like it if they fully comprehend the scope of the agreement which they propose to give the defendant, and the position in which they are seeking to place him.

The decree is reversed, and the bill dismissed.

*Decree reversed.*