RALPH PLUMB

*v.*

SAMUEL CAMPBELL.

*Filed at Ottawa November 15, 1888.*

1. CONTRACTS — *unilateral contract — question of mutuality — of elements essential to its binding effect.* A promise for a promise is not a good consideration unless there is mutuality, so that each party may hold the other to the performance of his engagement. But it does not follow that a contract in writing, to be complete, must show such mutuality on its face.

2. In the case of a unilateral contract, the party making the promise is bound to nothing unless the promisee, within a reasonable time, engages to do, or else does or begins to do, the thing which is the consideration of the first promise. Until such engagement, or such doing, the promisor may withdraw his promise, because there is no mutuality, and therefore no consideration for it.

3. But after an engagement on the part of the promisee which is sufficient to bind him, then the promisor is bound also, because there is then a promise for a promise, with entire mutuality of obligation. So if the promisee begins to do the thing in a way which binds him to complete it, there is also a mutuality of obligation. And if, without any promise whatever, the promisee does the thing required, then the promisor is bound, on the ground that the thing done is itself a sufficient and complete consideration, and the original promise to do something if the other party will do something, is a continuing promise until the other party does the thing required of him.

4. A promise lacking mutuality at its inception becomes binding on the promisor after performance by the promisee, and other proof of assent on his part is not necessary. It is sufficient if the required act is performed by him.

5. Where one party gives another a written promise or offer to sell his bonds at a given price, or make them realize the promisee such price upon the latter doing certain other things, proof of an express acceptance of the offer is not necessary to bind the promisor. Performance or part performance by the promisee, in such a way as to compel him to complete it, is sufficient.

6. Where a party was induced to do certain work, and accept in payment $50,000 of municipal bonds, upon the written agreement of a third person to sell the bonds for the former for a given sum on certain conditions, and if they should sell for less, to make up the deficit, and have all that might be realized above that sum for his services in selling, it was *held*, that the party so promising to sell for the amount stated could be held liable in either of three ways : First, by the other party engaging, within a reasonable time, to perform the contract on his part as to the conditions; second, by beginning such performance in a way that would bind him to complete it; and third, by actual performance.

7. SAME—*parol evidence to show performance.* Where a party promised another, in writing, to sell for the latter certain municipal bonds within a specified time after they were placed in his hands, with certain evidences of their validity, for a certain per cent of their face value, and make up the deficit in case of a sale for less, and to have any excess above that price for his services, it was *held*, that parol evidence of the performance of the conditions by the promisee was competent.

8. MEASURE OF DAMAGES—*breach of contract for sale of securities at a stipulated price.* The market value of property is resorted to for the purpose of obtaining the compensation to be paid to the injured party for a breach of contract, for the reason it is presumably the true value. If there is no market value, the real value is to be ascertained from such evidence of value as is attainable. The real value of municipal bonds may be shown by proof of the highest attainable selling price.

9. So in an action for the breach of a contract, in which the defendant guaranteed the sale of bonds at a certain price, when they sold for less than the price guaranteed, the court instructed the jury, that if they found for the plaintiff, to allow him the difference between the highest attainable selling price and the amount guaranteed by the defendant, with interest at six per cent from the time fixed for the sale by the parties: *Held*, that there was no error in the charge.

10. SAME—*interest—as an element of damages—on neglect to make sale of securities for another*. Where a person employed to sell municipal bonds guarantees a sale at a certain price within a given time after they come to his hands, and they are sold for a less price, which was the highest attainable one at the time of the sale, the owner of the bonds will be entitled to recover of the guarantor the difference between the selling price and that guaranteed, with six per cent interest on the difference from the time the sale should have been made.

11. GUARANTY—*principal and agent—sale of securities—notice*. Where an agent employed to make sale of bonds guarantees a sale within a given time at a certain price, and fails to perform on request, the principal may sell the bonds at the best price he can get, without notice to the agent, and hold him for the difference in the price, with interest.

12. LIMITATIONS—*whether a contract is verbal or written*. If an agreement, as set forth in writing, is so indefinite as to require resort to parol testimony to make it complete, it will be treated as an oral contract, in applying the Statute of Limitations.

13. Where one party alone signs a written agreement to do a certain thing when the promisee shall do some other act or thing, if the latter relies alone upon his engagement to perform on his part, the contract will be treated as oral, and the cause of action will be barred in five years; but where he relies upon actual performance, the cause of action will be barred only within ten years.

14. It does not follow because proof of performance is necessary to hold the promisor liable upon his unilateral written contract, that such contract is partly in parol.

15. INSTRUCTION—*must be based on evidence*. An instruction based on a hypothesis, wholly unsupported by the evidence, is properly refused.

16. NEW TRIAL—*newly discovered evidence*. To obtain a new trial on the ground of newly discovered evidence the party must show due diligence to discover and produce the new evidence, and it must be decisive in its character, and not merely cumulative.

APPEAL from the Appellate Court for the Second District;— heard in that court on appeal from the Circuit Court of La Salle county; the Hon. CHARLES BLANCHARD, Judge, presiding.

Messrs. BULL & STRAWN, for the appellant:

The contract was not complete until acceptance, and oral evidence of that fact being necessary, the contract is to be regarded as resting in parol. *Edwards* v. *Goldsmith*, 16 Pa. St. 43; *Goldsmith* v. *Dobson*, 5 Whart. 398; *Hurlbert* v. *Atherton*, 59 Iowa, 91; Bishop on Contracts, secs. 164, 321, 326; *Wright* v. *Weeks*, 25 N. Y. 153; *Smith* v. *O'Donnell*, 8 Lee, 468; *Vicary* v. *Moore*, 2 Watts, 456; 2 Parsons on Contracts, 492, note b.

If the bonds had no market value, and it was necessary to sell them to show the measure of damages, notice of the sale should have been given to appellant. *Bagley* v. *Findlay*, 82 Ill. 524; *Thorne* v. *McVeagh*, 75 id. 81; *Mulloy* v. *Lord*, 29 Barb. 454; *Pickering* v. *Bardwell*, 21 Wis. 562; *Kadish* v. *Young*, 108 Ill. 170; *Tompkins* v. *Hass*, 2 Pa. St. 74; *Crooks* v. *Moore*, 1 Sandf. 597; *Dunlap* v. *McAndrew*, 44 N. Y. 72.

A contract partly in writing and partly oral, is, in legal effect, an oral contract. Bishop on Contracts, sec. 164; *Railway Co.* v. *Maddox*, 18 Kan. 546; *Dwight* v. *Pomeroy*, 17 Mass. 303; *Lang* v. *Henry*, 54 N. H. 57; *Dana* v. *Hancock*, 30 Vt. 619; *Briggs* v. *Railway Co.* 31 id. 211.

Interest is not recoverable on unliquidated damages. *Buckmaster* v. *Grundy*, 3 Gilm. 626; 1 Johns. 315; *Newell* v. *Griswold*, 6 id. 44; *Holliday* v. *Marshall*, 7 id. 213.

Mr. E. N. RINEHART, and Messrs. DUNCAN & O'CONNOR, for the appellee:

Performance by the plaintiff is a good consideration, and removes the objection of want of mutuality. *Railroad Co.* v. *Graff*, 27 Iowa, 99; *Willetts* v. *Insurance Co.* 45 N. Y. 47; *Train* v. *Gold*, 5 Pick. 384; *Miller* v. *McKenzie*, 95 N. Y. 578; Angell on Limitations, sec. 113; Bishop on Contracts, secs. 87, 329; *Ullmann* v. *Kent*, 60 Ill. 271.

Mr. JUSTICE WILKIN delivered the opinion of the Court:

This case originated in the circuit court of La Salle county. The declaration is in assumpsit, to which appellant, who was defendant below, filed the general issue, and two special pleas interposing the five years' Statute of Limitations. The first of these pleas avers that the contract sued on is not in writing, and the second, that it is partly in writing and partly by parol, to both of which appellee replied that the contract was in writing. Appellee recovered a judgment in the circuit court, for $14,000, which has been affirmed by the Appellate Court, and the record is brought before us by this further appeal.

The writing relied upon by appellee under the pleas of the Statute of Limitations, is as follows:

*"August 17, 1875.*

"This agreement witnesseth, that Ralph Plumb agrees to sell the fifty town bonds voted by the town of Douglass, in Effingham county, Illinois, to aid in the construction of the Bloomington and Ohio River railroad, for Samuel Campbell, unless prevented by some means which he can not control, within twenty days after said Campbell shall place said bonds under the control of said Plumb, properly issued and dated, and deliver to said Plumb the certificate of the supervisor of said town that the conditions upon which said bonds were voted have been complied with, so as to entitle said bonds to registry under the law, and out of the proceeds of said sale to pay said Campbell $45,000, and if said bonds shall sell for less than $45,000, said Plumb will pay said Campbell the deficit, and if they shall sell for more than $45,000, said Plumb may retain the excess for his fees for selling.

RALPH PLUMB."

This he maintains is a written contract, on which he might bring his action at any time within ten years, under section 16, chapter 83, of the Revised Statutes, whereas appellant contends that it could only become an agreement when aided by

parol evidence, and is therefore an oral contract, governed by the provisions of section 15 of the same chapter, barring the action in five years.

If it be true that the agreement, as set forth in writing, is so indefinite as to necessitate resort to parol testimony to make it complete, the law is, that in applying the Statute of Limitations it must be treated as an oral contract. Both reason and authority support this view.

The contention of appellant is, that for want of an agreement on the part of appellee to do anything on his part, as shown by the writing, there is want of that mutuality which is necessary to every complete contract. A promise for a promise is not a good consideration, unless there is mutuality, so that each party may hold the other to the performance of his engagements. It does not follow, however, that a contract in writing, to be complete, must show such mutuality on its face. There is a seeming want of mutuality in many cases of contract which may be enforced by the parties on the same proof as would have been necessary had that mutuality fully appeared,—"as, where one promises to see another paid if he will sell goods to a third person, or promises to give a certain sum if another will deliver up certain documents or securities, or if he will forbear a demand, or suspend legal proceedings, or the like." (1 Parsons on Contracts, sec. 450.) In commenting on this class of cases, the author says: "Here, it is said that the party making the promise is bound, while the other is at liberty to do anything or nothing. But this is a mistake. The party making the promise is bound to nothing until the promisee, within a reasonable time, engages to do, *or else does or begins to do*, the thing which is the condition of the first promise. Until such engagement or *such doing*, the promisor may withdraw his promise, because there is no mutuality, and therefore no consideration for it. But after an engagement on the part of the promisee, which is sufficient to bind him, then the promisor is bound also, because there is

now a promise for a promise, with entire mutuality of obligation. *So if the promisee begins to do the thing in a way which binds him to complete it, here is also a mutuality of obligation. But if, without any promise whatever, the promisee does the thing required, then the promisor is bound on another ground. The thing done is itself a sufficient and a complete consideration, and the original promise to do something if the other party would do something, is a continuing promise until that other party does the thing required of him.*"

A promise lacking mutuality at its inception becomes binding upon the promisor after performance by the promisee. *Willetts* v. *Sun Mutual Ins. Co.* 45 N. Y. 45,—citing *Train* v. *Gold,* 5 Pick. 380; *Hilton* v. *Southwick,* 17 Me. 303; *L'Amoreaux* v. *Golreed,* 7 N. Y. 349, (6 Am. Rep. 31;) *Des Moines Valley Railroad Co.* v. *Graff,* 27 Iowa, 99, (1 Am. Rep. 256;) *Boston and Maine Railroad Co.* v. *Bartlett et al.* 3 Cush. 224; Langdell's Select Cases on Contracts, 94.

These contracts are sometimes called unilateral contracts. Proof of assent is not necessary on the part of the promisee. It is sufficient if the required act be performed by him. Hare on Contracts, 304.

On these authorities, it is clear that appellant could be bound, under this writing, in either of three ways: First, by appellee engaging, within a reasonable time, to perform the contract on his part; second, by beginning such performance in a way which would bind him to complete it; and third, by actual performance. If appellee was relying upon the first, and was attempting to show his engagement by parol, he would be within the rule insisted upon by appellant, and decided in *Hurlbut* v. *Atherton,* 59 Iowa, 91. Such is not the case made by his declaration. He seeks, by the allegations of his declaration, to charge appellant, not because of any promise on his part, but because he, in fact, performed,—actually did the things to be done by him. Under the allegations of the declaration, and the pleas, the terms of the contract between the

parties are as definite as though the promise of appellee had been written at length and the paper signed by both. No parol proof was necessary, or even admissible, to add to or take from the writing. It can not be maintained, that because proof of performance is necessary to hold appellant liable on his promise, therefore the contract rests partly in parol. The necessity for such proof is no greater than if the mutuality of the contract fully appeared upon the face of the writing. We perceive no reason for distinguishing this from an ordinary contract in writing, in applying the Statute of Limitations, and therefore hold that the action was not barred.

It is also contended by counsel for appellant, that certain parts of the testimony of appellee, and Anthony Thornton, who was a witness introduced on his behalf, were incompetent, and improperly admitted, over objection by appellant; and it is argued, that if such proof was necessary to establish the contract, then it must follow that it is but an oral contract, proven partly by the writing and partly by this parol testimony, but if not necessary for that purpose, then it was incompetent. The manifest object of the testimony objected to was to prove performance on the part of appellee. For that purpose it was clearly competent. We think it all tended to prove that fact. The objections to it were general, going only to the materiality of the evidence under the issues. We find no substantial error in the rulings of the trial court in admitting evidence.

The court refused instructions numbered 4, 6, 10, 12, 13 and 14, asked by appellant, and this is assigned for error. The fourth is objectionable, in that it requires the appellee, in addition to the introduction of the paper sued on, to "show, by a preponderance of evidence, that he accepted the proposition according to the terms therein stated, and that he in some way notified the defendant that he accepted the proposition made in such paper." The sixth, in that it informs the jury that the plaintiff "must show, by the evidence, that he also agreed to place said bonds under the control of the de-

fendant, and that the defendant might retain for his fees, in selling said bonds, whatever they might sell for over the sum of $45,000." As we have seen, proof of an express acceptance of such an offer is not necessary to bind the party making it, but performance or part performance, in such a way as to compel the promisee to complete it, is sufficient. The tenth was properly refused, because substantially given in others. The twelfth is subject to the same objection as the fourth and sixth. Besides, no attempt was made to prove an acceptance of the offer, oral or written, and therefore there is no evidence in the record on which to base it. The thirteenth improperly declares that the contract in question is not, in law, a contract in writing, and that the five years' limitation must be applied. By an omission. the fourteenth is rendered meaningless. It reads as follows:

"14. That even if the jury find that the bonds mentioned in the paper dated August 17, 1875, were delivered to the defendant, or placed in his control, for the purpose of sale, then the plaintiff would be entitled to recover what the evidence shows was the difference between the market value, or what the bonds might have been sold for on the expiration of the twenty days after they were left with the defendant, and the burden of proof to show what said bonds were worth or might have sold for at that time, rests upon the plaintiff."

The intention evidently was to fix the plaintiff's right to recovery in amount to the difference between the market value of the bonds at the expiration of twenty days, *and the contract price.* The Appellate Court having found that the bonds in question had no market value, the instruction must have been refused if it had been written as intended.

The question still remains, however, did the trial court, by its instructions to the jury, apply to the facts a correct rule for the measure of damages? By plaintiff's first instruction the jury are directed, in substance, if they find for the plaintiff, to allow him the difference between the highest attainable

selling price and the amount guaranteed by the defendant, together with interest at six per cent from the lapse of twenty days from the delivery of the bonds. In every such case, the true purpose of the law is to give compensation to the party injured by the breach of contract. The market value is resorted to in ascertaining such compensation, because presumably the market value represents the true value, and because, in ordinary cases of sale and purchase, the parties can go into the market and make themselves whole if given the market price. But if there is no market value, the real value is to be ascertained from such evidence of value as is attainable. Sedgwick on the Measure of Damages, 314; *Murry* v. *Stanton,* 99 Mass. 345; *Kountz* v. *Kirkpatrick,* 72 Pa. St. 376, (13 Am. Rep. 691.) The real value of the bonds may be shown by proof of the highest attainable selling price. The difference between that value and what appellee would have received had appellant performed his contract, with legal interest from the time the money should have been paid, compensates appellee, and is the measure of his damages. As to appellee's right to recover interest, his case is not distinguishable, on principle, from that of *Driggers* v. *Bell,* 94 Ill. 223, "otherwise appellee would not be indemnified." *Thomas* v. *Wells,* 140 Mass. 517.

It is earnestly contended on behalf of appellant, by his counsel, that the sale of the bonds by appellee is to be treated as a re-sale, and that appellant can not be held bound thereby because he was not notified thereof. It was not in fact a re-sale. The bonds had never been sold. The contract between the parties was not one of purchase and sale, but rather an employment by appellee of appellant to make a sale, in which appellant guaranteed a sale within a certain time for a certain price, so that even if notice should be held necessary in cases of re-sale, that doctrine would not apply here. We think, however, that the Appellate Court decided correctly in holding that on appellant's theory of the case, under the facts, no no-

tice of appellee's intention to sell was required. (*Ullmann* v. *Kent*, 60 Ill. 271.) The proof tends to show, and we must presume that the fact is established, that after the expiration of twenty days from the delivery of the bonds to appellant, he was requested by appellee to comply with the terms of the contract, and that he declined to do so. No farther notice to him was necessary. Appellee might then legally sell, and hold appellant liable for the loss sustained. Benjamin on Sales, sec. 788, note e, and authorities cited.

One of the grounds relied upon by appellant, in his motion for a new trial, was that of newly discovered evidence. This ground could only be availed of by showing due diligence on his part to discover and procure the evidence on the trial, and that the newly discovered testimony was conclusive in its nature, and not merely cumulative. Neither of these facts is shown by the affidavits filed in support of the motion. The only controverted fact on the trial was whether or not the bonds were placed under the control of appellant by appellee. To prove that they were, appellee introduced his own testimony and that of Judge Thornton, and perhaps other evidence. To the contrary is the evidence of appellant, Charles Ridgely, John T. Smith and William Ridgely. The affidavit of these last three is filed in support of the motion, as showing what the newly discovered evidence is. The most that can be claimed from this showing is, that these witnesses, having refreshed their memories by examining certain books kept in their banking house, would, upon another trial, more directly and positively corroborate appellant, and would swear that the bonds were not left in their bank subject to the control of appellant. Their testimony very strongly tended to prove that fact before, but against it was that offered on behalf of appellee. The newly discovered testimony is but a newly discovered means of refreshing the recollection of these witnesses, not in any sense conclusive.

We find no substantial error in this record, and are of opinion that the judgment of the circuit and Appellate courts should be affirmed.                *Judgment affirmed.*

Mr. JUSTICE BAKER, having heard the case in the Appellate Court, took no part in the decision here.