DETERMINED IN THE

## FOURTH DISTRICT

OF THE

# APPELLATE COURTS OF ILLINOIS

### DURING THE YEAR 1910.

## Charles F. Miller, Appellant, v. Thomas Moffat et al., Appellees.

1. CONTRACTS—*what essential to validity.* A contract to be binding and enforceable must at its inception have absolute mutuality.

2. CONTRACTS—*what supplies want of mutuality.* Where a party not bound to perform under the terms of a unilateral agreement, within a reasonable time performs, or begins to do the thing in a way which binds him to complete it, this supplies the want of mutuality and is a sufficient consideration to support the promise of the other party.

3. CHANCERY—*jurisdiction to cancel unilateral contract.* Chancery has jurisdiction to cancel a contract void at its inception for want of mutuality, if such contract has not become mutual by performance or part performance.

Bill in equity. Appeal from the Circuit Court of Randolph county; the Hon. LOUIS BERNREUTER, Judge, presiding. Heard in this court at the October term, 1909. Reversed and remanded. Opinion filed February 11, 1910.

H. CLAY HORNER, for appellant.

WILLIAM M. SCHUWERK and A. E. CRISLER, for appellee.

MR. JUSTICE SHIRLEY delivered the opinion of the court.

Appellant filed an amended bill in equity for the

(1)

cancellation of what he claimed to be a unilateral agreement entered into with appellee, Thomas Moffat, and by him assigned to appellee, Moffat Coal Company.

The bill alleges that on October 27, 1903, the appellant and appellee, Thomas Moffat, executed an agreement in words and figures as follows:

"This agreement and lease entered into this 27th day of October, 1903, by and between Charles F. Miller of the city of Sparta, the County of Randolph and State of Illinois, party of the first part, and Thomas Moffat, of Sparta, in the same County and State, party of the second part, Witnesseth:—

That the said Charles F. Miller, party of the first part, for the consideration hereinafter mentioned to be performed by the party of the second part, agrees that the said Thomas Moffat, party of the second part, may mine and remove coal from under the following described real estate: The west half (W. 1/2) of the northwest quarter (N. W. 1/4) of section sixteen (16), township five (5) south, range five (5) west of the principal meridian, containing eighty (80) acres, provided however, said right and privilege shall not extend for a longer period than fifty years from the date hereof; and for the purpose of mining the said coal from said land, the said party of the second part may have and use sufficient of the surface of the said land for the necessary airshafts, pump house, etc., at such place as may hereafter be agreed on, or may be designated by the party of the second part, and also the right and privilege to the party of the second part, to use such entries and ways through and underneath said surface as may be made and opened for mining purposes, for the use of mining, working and transferring coal, mined from other adjoining lands not herein described or leased.

"And the said party of the second part in consideration of the premises, as above set forth, doth hereby agree to keep correct account of all coal mined and removed from said land, and render a true monthly statement thereof to the party of the first part, on the 10th day of each month for the preceding month, and

agree to pay the said party of the first part on the 20th day of the same month and monthly on the 20th day of each month during the time said mine may be operated and coal mined and removed therefrom, two and one half (2-1/2) cents per ton for each ton of coal that may be mined and removed from such mine.

"It is further agreed expressly by and between them, the parties hereto, that if default be made in the payment of any of the amounts of money due for coal taken from said premises, or any part thereof, will appear in 90 days after the same becomes due, or if the said party of the second part fail to observe and keep any of the covenants and agreements above mentioned, then this agreement at the option of the said party of the first part, shall immediately become null and void.

"It is further agreed that at the expiration of 50 years above mentioned, and upon payment of all sums that may be due from the said party of the second part to the party of the first part, then the party of the second part may remove from the said premises any and all of his machinery and property, and shall deliver the possession of the said premises to the party of the first part without further notice.

"It is further agreed that this instrument and agreement shall be binding on the said parties of the first part and second parts, their heirs, executors, administrators and assigns.

"In witness whereof the said parties have hereunto set their hands and seals, in duplicate, the day and year first above mentioned.

"Charles F. Miller, [Seal]
"Party of the first part.
"Thos. Moffat,
"Party of the second part.
"In presence of T. F. Alexander."

It was further averred that after the execution of the agreement Thomas Moffat voluntarily advanced to appellant the sum of $100 to be applied on the royalty for coal mined under the agreement when it should be mined; that Thomas Moffat afterwards assigned the agreement to the appellee coal company and that

Thomas Moffat nor his said assignee had at any time since the execution of the instrument taken any steps toward mining coal under said lands or under any other of appellant's land. That neither of the appellees had paid any taxes on the said land, the same having all been paid by appellant. That nothing whatever had been done by appellees toward carrying out said agreement and that appellant under the terms of said agreement was powerless to compel appellees or either of them to do anything whatever under said agreement.

It was further averred said agreement was unilateral and revocable at appellant's pleasure; that appellant before filing his bill had served notice upon appellee coal company that he had elected to revoke and annul said agreement and that at the same time he had tendered to said coal company the said $100 so advanced. Appellant further averred he brought the same into court offering to deposit it with the court and to pay interest on the same if the court should so direct. The bill prayed a cancellation of the agreement and that it be declared null and void and for other and further relief. A general demurrer was sustained to the bill and appellant electing to stand by it, the bill was dismissed for want of equity and a judgment for costs entered against appellant from which he appealed.

It will be noticed upon reading the agreement above recited that appellee Moffat does not undertake nor is he required by its terms to mine any coal whatever during the life of the agreement. If any coal is mined under the contract he must pay as a royalty for such coal, two and one-half cents per ton for the coal mined monthly, but as he does not agree to mine any definite quantity or any quantity whatever, he is not bound to do so.

It is an elementary principle of the law of contracts that if one party to a contract is under no obligation to perform at all the contract is void. A contract to

be binding and enforceable must have at its inception, absolute mutuality. Chitty on Contracts, 13; Addison on Contracts, Vol. 1 sec. 18; Bishop on Contracts, sec. 429; Cortelyou v. Barnsdall, 236 Ill. 138.

"A promise for a promise is not a good consideration unless there is mutuality so that each party may hold the other to the performance of his engagement." Plumb v. Campbell, 129 Ill. 101.

"In case of a unilateral contract the party making the promise is bound to nothing unless the promisee within a reasonable time engages to do so or else does, or begins to do the thing which is the consideration of the first promise. Until such engagement or such doing, the promisor may withdraw his promise because there is no mutuality and therefore no consideration for it." Plumb v. Campbell, *supra*.

We are of opinion this agreement was void at its inception for want of mutuality. It is claimed by appellees that the authorities relied on by appellant refer to oil and gas contracts and such contracts are to be distinguished from contracts for the removal of coal or other solid minerals. Where the question involved is the alleged want of mutuality as it is here, the subject-matter of the contract is immaterial.

The amended bill avers as may be observed, that appellee Moffat after the execution of the contract voluntarily advanced to appellant the sum of $100 to be applied on the royalty for coal mined under the agreement, when so mined; and further that neither said Moffat nor his assignee had ever mined or attempted to mine any coal from said lands. That no shaft had been sunk or started and no entry driven into or near said coal of appellant. Appellant further avers he brings the said sum so paid to him into court and tenders it back to said corporation or brings it into court to be disposed of as the court may deem proper.

It is argued that by so accepting the $100 the appellant bound himself by the terms of the contract and appellee Moffat also bound himself in the same way.

Where a party not bound to perform under the

terms of a unilateral agreement within a reasonable time performs, or begins to do the thing in a way which binds him to complete it, this supplies the want of mutuality and is a sufficient consideration to support the promise of the other party. Plumb v. Campbell, *supra;* Corbett v. Cronkhite, 239 Ill. 9, 16.

We are of opinion there is no averment in appellant's bill that shows performance, or a beginning to perform on the part of appellees which would bind them to do anything in the way of performance; that is, the mining of coal from the land described. The material purpose and object of the agreement so far as appellant was concerned was the mining of coal and the payment of the royalty which as has been shown appellees were not bound to do, and the payment of the sum of $100 was no payment of royalty for coal mined. No coal had been mined and no royalty was due and such payment was in no wise part performance of the agreement on the part of appellees. The agreement called, not for such payment, but for the payment of two and one-half cents per ton for coal mined.

The right of appellant to resort to equity to cancel a contract void at its inception for want of mutuality and which had not become mutual by performance, or by part performance in a way which would bind appellees to complete it, seems to be well established. Cortelyou et al. v. Bardsdall et al., 236 Ill. 138.

We are of opinion the court erred in sustaining the demurrer, dismissing the bill, and rendering judgment against appellant for costs.

The judgment is reversed and the cause remanded with directions to overrule the demurrer.

*Reversed and remanded.*