HUBERT N. DAVIS *et al.*, Plaintiffs-Appellants, *v.* NOKOMIS QUARRY, INC., *et al.*, Defendants-Appellees.

Fifth District    No. 79-65

Opinion filed November 14, 1979.

Edward R. Green, of W. Joseph Gibbs Law Offices, of Springfield, for appellants.

Charles E. Bliss, of Hershey, Bliss, Beavers, Periard and Ramano, of Taylorville, and Ralph A. Vandever, of Vandever & Vandever, of Hillsboro, for appellees.

Mr. JUSTICE KARNS delivered the opinion of the court:

At issue in this appeal from the judgment of the Circuit Court of Montgomery County is the duration of a mineral lease. Plaintiffs are landowners in Christian County who leased 60 acres of their property to defendant Nokomis Quarry on November 17, 1966. Nokomis subsequently assigned its interest in the lease to defendants Louis Marsch Management, Inc., and Prosser Construction Co. Plaintiffs maintain that the lease terminated on July 1, 1977. Defendants contend that they hold a perpetual lease, terminable only upon notice of surrender or nonpayment of rent. Defendants' annual rental payments tendered on June 1, 1976, and June 1, 1977, have been refused by plaintiffs.

Plaintiffs' complaint is in two counts, the first seeking a declaration that the lease had terminated, the second asking damages for injury to the freehold. The trial court found the lease to be perpetual and entered an order finding no reason to delay appeal of that ruling pursuant to

Supreme Court Rule 304(a) (Ill. Rev. Stat. 1977, ch. 110A, par. 304(a)). Only this question is before us on this appeal, as the court's ruling as to the second count is not a final appealable order. *Browning v. Heritage Insurance Co.* (1974), 20 Ill. App. 3d 622, 314 N.E.2d 1.

Under the lease, defendants received the exclusive right to remove limestone from the premises. The term of the lease was from the date of its execution, November 17, 1966, to the first day of July 1967, and "from year to year thereafter." The lessee agreed to pay $1,000 for the term ending the 30th day of June, 1967, and "the sum of one thousand dollars ($1,000) on the first day of July, 1967, and a like sum on the first day of July of each year thereafter until this lease is terminated, as hereinafter provided." In addition to the annual rentals, the lessee agreed to pay royalties of five cents per ton of limestone quarried and removed, any royalties due to be credited first against the $1,000 annual rent in any one rental year. The lease does not oblige defendant to commence quarrying by any certain date, nor does it require defendant to remove a certain quantity of stone. The question of abandonment or forfeiture of the lease for nonproduction is not before us, however. See Annot., 87 A.L.R.2d 1076 (1963).

The lease provides for termination by the lessee if notice is given by March 1 of a rental year. It allows the lessor to terminate with 30 days' notice if the lessee defaults in rent or royalty payments. The lease provides that the lessee may from time to time remove and replace its quarrying machinery and fixtures without notice, "provided it is not the purpose of the operator to remove all of the same from the land and discontinue operations under this lease." If all royalties have been paid in full, the lessee may remove its equipment and fixtures after giving 30 days' notice.

On September 21, 1976, plaintiffs sent a notice purporting to terminate the lease within 10 days. In this notice plaintiffs alluded to their refusal of lessee's rent check for the current year and listed several reasons for termination; however, the only issue presently before us is the terminability of the lease at the end of the annual rental period. We are told that the question of the essential validity of a perpetual lease or a lease for a fixed term with an unlimited or "perpetual" covenant of renewal is a matter of first impression in Illinois. We believe that it is of no significance whether the term of the lease purports to be perpetual or contains a covenant of perpetual renewal, nor do the parties attach any significance to the distinction. The plaintiffs concede that such leases are not invalid, but maintain that absent a clear expression of intent to grant a perpetual term, by the use of words of perpetuity, such as "forever," "everlasting" or "for all times," there is a presumption against the granting of such a perpetual lease. *Lonergan v. Connecticut Food Store, Inc.*

(1975), 168 Conn. 122, 357 A.2d 910; 51C C.J.S. *Landlord & Tenant* §61b (1968); 50 Am. Jur. 2d *Landlord & Tenant* §1170 (1970).

We are not entirely persuaded that the question is one of first impression in this State. Case law involving mineral leases offers some precedent to us. In many respects, the lease before us resembles a royalty lease of minerals. Royalty leases express the lessee's obligation to pay an amount per ton of mineral extracted. Royalty payments may constitute the sole source of consideration and the lessee receives nothing for the use of his land unless the minerals are removed. Such leases were not favored in Illinois and were held unenforceable for lack of mutuality, based on the "elementary principle of the law of contracts that if one party to a contract is under no obligation to perform at all the contract is void." (*Miller v. Moffat* (1910), 153 Ill. App. 1, 4; *Moffat Coal Co. v. Miller* (1912), 173 Ill. App. 408.) In *Illinois Kaolin Co. v. Goodman* (1911), 252 Ill. 99, 96 N.E. 867, the supreme court held that a royalty mineral lease of indefinite duration was void for lack of mutuality and impliedly fraudulent. The instant lease, however, requires payment of at least $1,000 annually and therefore satisfies the mutuality requirement.

In *Cortelyou v. Barnsdall* (1908), 236 Ill. 138, 86 N.E. 200, a lessee of a royalty lease asserted that despite the tentative nature of royalties, sufficient consideration could be found in his implied covenant to develop the mineral reserves. The court rejected this argument and held the lease void for want of mutuality.

The implied covenant theory was founded "upon the ground that the lessor's chief remuneration is to be derived from the royalties resultant from development and operation; that this remuneration constitutes his chief inducement for executing the lease; that therefore, the lease, in all respects, must be construed as having written into it this duty of diligently promoting the productivity of the premises." M. H. Merrill, Covenants Implied in Oil and Gas Leases §221 (2d ed. 1940); *Carter v. Certain-Teed Products Corp.* (N.D. Iowa 1952), 102 F. Supp. 280.

Later cases have adopted this theory. In *Daughetee v. Ohio Oil Co.* (1914), 263 Ill. 518, 105 N.E. 308, an implied covenant of development was incorporated into an oil and gas lease. The court noted that the interest conveyed under the lease was a freehold estate, as the duration of the lease could continue indefinitely. Again, in *Stoddard v. Illinois Improvement & Ballast Co.* (1916), 275 Ill. 199, 113 N.E. 913, a limestone quarrying lease provided that it would be in effect for 10 years or so long thereafter as the property was suitable for quarrying purposes. In a suit for damages by the landowner, the court held that there was an implied covenant that the lessee would continue quarrying stone so long as it was found in suitable quantities. Admittedly, in neither case was the question one involving a "perpetual" lease; however, the language in both cases

suggests that the term of the lease would not present a problem in the case of a mineral lease, at least once quarrying or the extraction of the mineral from the ground had begun.

In the present case, if quarrying is undertaken the term of the lease may be indefinite but hardly perpetual, as the limestone, as other minerals, is subject to eventual depletion. If quarrying is not undertaken, the landowners have the continued use of their land for farming and the $1,000 yearly rental. The status of quarrying operations on plaintiffs' land is not before us on this appeal.

■■ The validity of perpetual leases, per se, has not been expressly addressed by statute or case law in Illinois. (See generally Annot., 31 A.L.R.2d 607 (1953), and later case service.) Section 6 of "An Act to revise the law in relation to mines" (Ill. Rev. Stat. 1977, ch. 96½, par. 156) states simply that "[a]ny mining right, or the right to dig for or obtain iron, lead, copper, coal, or other mineral from land, may be conveyed by deed or lease, which may be acknowledged and recorded in the same manner and with like effect as deeds and leases of real estate."[1]

In *Green v. Dietrich* (1885), 114 Ill. 636, 3 N.E. 800, the court determined that a perpetual lease was not created by a contract for sale which granted the prospective buyer an unlimited right of possession if the owner failed to supply good title within three years. The court stated:

> "But what was the relation that existed between the parties after the expiration of the three years in which the vendor had to perfect his title? Was it that of landlord and tenant? If so, how long was that relation to endure? If at all, it might be perpetual, and such a lease would be void as being inhibited by law. There * * * can be no such thing as a perpetual or unending lease of land, and it seems unreasonable that the parties in this case were contracting for such a lease." 114 Ill. 636, 643.

We are of the opinion that the court's remarks should be limited to the unusual factual situation before it and should not be read to pronounce perpetual leases to be invalid per se. The enforcement of a 999-year lease in *Henderson v. Virden Coal Co.* (1898), 78 Ill. App. 437, is persuasive evidence that an otherwise valid lease is not rendered invalid by the extreme duration of its term.

■■ It is clear, however, that a perpetual term will not be implied from renewal clauses alone. (*United States Brewing Co. v. Wolf* (1913), 181 Ill. App. 509.) *Schumacher v. Fatten* (1958), 18 Ill. App. 2d 387, 152 N.E.2d 402, held that a five-year lease "with option to renew" entitled the lessee to

---

[1] We note that the rule against perpetuities was once thought to restrict the duration of mineral leases. Modern authorities agree, however, that the rule does not apply. See 2 Summers, Oil and Gas §246, at 176 (1959); *Henderson v. Virden Coal Co.* (1898), 78 Ill. App. 437; 3 American Law of Mining §16.42, at 316 (Rocky Mtn. Min. Foundation 1960); Reidy, *Perpetuities and Mineral Development*, 22 Rocky Mtn. Min. L. Inst. 15 (1976).

a single five-year extension on the same terms specified for the initial period, save for the renewal clause. The court noted that "[c]ounsel have referred to no Illinois decision construing an option to renew which fails to specify the duration of the new term or the amount of rent. Courts of other jurisdictions have held that such an option implies an additional term at the same rental but without further renewal." (18 Ill. App. 2d 387, 392-93, 152 N.E.2d 402, 405.) We regard *Schumacher* as standing for the proposition that absent clear manifestation of the parties' contrary intent, an option to renew will effect but a single extension of the same length as the original lease.

The parties direct our attention to numerous cases from other States, most of which concern leases of residential and commercial real estate and are readily distinguishable on their facts, as possession of the premises and improvements is transferred to the lessee for the term of the lease.

In *McLean v. United States* (E. D. Va. 1970), 316 F. Supp. 827, lessees contended that a covenant for annual renewals created a perpetual lease of parking areas to the Virginia Beach Officers Club. The court, noting that the lease lacked specific words of perpetuity and a rent escalator clause, held that a perpetual lease was not created. The court acknowledged, however, that the issue before it "[was] not whether perpetual leases are valid but whether the lease in question qualifies as a valid perpetual lease" and relied on State court precedent to resolve that question. (316 F. Supp. 827, 829.) *Kalicki v. Bell* (N.J. App. 1964), 83 N.J. Super. 139, 199 A.2d 58; *Hallock v. Kintzler* (1943), 142 Ohio St. 287, 51 N.E.2d 905; *Geyer v. Lietzan* (1952), 230 Ind. 404, 103 N.E.2d 199; *Kilbourne v. Forester* (Mo. App. 1970), 464 S.W.2d 770; and *Waldrop v. Siebert* (1970), 286 Ala. 106, 237 So. 2d 493, are cases holding that renewal clauses in leases for a limited term do not create perpetual leases or powers to renew.

*Lonergan v. Connecticut Food Store, Inc.* (1975), 168 Conn. 122, 357 A.2d 910, similarly involved a five-year lease containing a covenant for "automatic" annual renewals unless the tenant gave notice of termination. The court looked to the language and intent of the parties and determined that the lease was not perpetual, noting, however, that

> "[I]t is well settled in most other jurisdictions that, absent statutory provisions to the contrary, the right to perpetual renewal of a lease is not forbidden by the law, either upon the ground that it creates a perpetuity or a restraint on alienation or upon any other ground, and such provisions, when properly entered into, will be enforced. [Citations.]" 168 Conn. 122, 124, 357 A.2d 910, 913.

We do not regard the absence of an escalation clause or explicit words of perpetuity as conclusive evidence that a perpetual lease was not

intended in the case before us. The instrument must be construed as a whole, embracing the circumstances reflected therein. *Miller v. Ridgley* (1954), 2 Ill. 2d 223, 117 N.E.2d 759.

In many respects, the instrument before us is similar to the lease construed in *President & Trustees v. Athens Livestock Sales* (1961), 115 Ohio App. 21, 179 N.E.2d 382. The controlling clause of that lease demised certain premises "for and during the full term of the three years, from the first day of March, A.D. 1937, until the 1st day of March, A.D. 1940, and thereafter on a year to year basis until termination by the lessees by one months' notice in writing * * *." Rent was payable on the first days of September and March "of each and every succeeding year during the term of the lease." The court concluded that the quoted language established a perpetual lease, notwithstanding precedent generally disfavoring such duration:

> "While the language of the document undoubtedly could have been improved by the use of such words as 'forever,' 'for all time,' 'in perpetuity' or other standard words denoting perpetuity [citation], we are of the opinion, in considering the instrument as a whole, that it was the intention of the parties to create a perpetual lease so long as the terms were complied with. This conclusion is further buttressed by the conduct of the original parties and their successors for a period of over twenty years. [Citation.]" 115 Ohio App. 21, 24, 179 N.E.2d 382, 384-85.

The stated duration of the instrument before us is "for a period from the date hereof to the 1st day of June, 1967, and from year to year thereafter until the lease is terminated as hereinafter provided." The lease is expressly made terminable upon notice by the lessee that he intends to cease operations on the land or upon notice by the lessor that rent or royalties are unpaid. As stated in *President & Trustees v. Athens Livestock Sales*, "[t]he language of the lease clearly sets forth the necessity of a positive act on the part of the lessees, i.e. termination by them by one month's notice * * *. Otherwise the lease was in effect until the lessees give proper notice. The use of the words 'thereafter,' 'terminated by lessees' and 'succeeding years' in their context can support only this conclusion." 115 Ohio App. 21, 23-24, 179 N.E.2d 382, 384.

Here, the lease was in force for 10 years before the lessors asserted a power to terminate. We think it would be unreasonable to read into this lease an intention to grant to the landowners a power to terminate after quarrying operations had begun and after the lessee had moved onto the premises quarrying machinery and had incurred the obvious expenses attendant therefor; and, as we have noted, until quarrying operations have begun, the landowners retain possession of their land for farming purposes, or any other use as they may choose. Contrary to the assertion

of the lessors, we think it is significant that this is a mineral lease and that the landowner has the privilege of possessing his land so long as it does not interfere with the lessee's mining right and receives an annual rental payment of $1,000.

Whether the lease is considered a perpetual lease, or a lease for a one-year term containing a covenant of perpetual renewals for a like term unless terminated as expressly provided therein, we hold that the intention of the parties to enter into such a perpetual lease is clearly and unambiguously expressed in the terms of the lease.

The judgment of the Circuit Court of Montgomery County is accordingly affirmed.

Affirmed.

JONES, P. J., and KASSERMAN, J., concur.