NOTICE

Decision filed 04/01/10. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

NO. 5-08-0322

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

ICG NATURAL RESOURCES, LLC, ) Appeal from the
) Circuit Court of
   Plaintiff-Appellant, ) Perry County.
)
v. ) No. 07-CH-20
)
BPI ENERGY, INC., f/k/a BPI Industries, Inc.; )
ADDINGTON EXPLORATION, LLC; and )
NYTIS EXPLORATION COMPANY, LLC, ) Honorable
) James W. Campanella,
   Defendants-Appellees. ) Judge, presiding.
_____

PRESIDING JUSTICE GOLDENHERSH delivered the opinion of the court:

Plaintiff, ICG Natural Resources, LLC, filed a declaratory judgment action in the circuit court of Perry County against defendants, BPI Energy, Inc., formerly known as BPI Industries, Inc. (BPI); Addington Exploration, LLC (Addington); and Nytis Exploration Company, LLC (Nytis). The plaintiff asked that two coal-bed-methane leases executed by its predecessor in title be declared void. Cross-motions for a summary judgment were filed by the parties. Ultimately, the trial court granted a summary judgment in favor of defendants, finding that the leases were not void. Plaintiff now appeals. We reverse and enter a summary judgment for plaintiff.

BACKGROUND

Plaintiff owns 41,253 acres of coal and coal-bed-methane rights in Macoupin County and 22,997 acres of coal-bed-methane rights in Perry County. Plaintiff acquired the rights to the coal and coal-bed methane pursuant to an "Asset Purchase Agreement" through bankruptcy. Plaintiff's predecessor in title to the coal, Meadowlark, executed two coal-bed-

1

methane leases, one for Macoupin County and one for Perry County, in favor of Addington. Meadowlark is not a part of this litigation. Nytis succeeded to the interests of Addington. Nytis then assigned development rights under both leases to BPI under a November 2, 2004, farmout agreement. The leases are for 99 years, during which the lessee has no obligation to explore for or produce the mineral and no obligation to pay an advance royalty, a minimum royalty, or other payments in lieu of production. Under the leases, the lessee receives payments only if the mineral is produced.

Prior to obtaining the assignment of the development rights through the farmout agreement, BPI performed a "cursory search" of title but did not take any steps to determine if the leases were valid. BPI paid Nytis $100,000 pursuant to the farmout agreement. BPI did not notify plaintiff that it had entered into the farmout agreement. In August 2006, BPI conducted a core test on the leased property located in Perry County, and in September 2006, BPI conducted a core test on the leased property located in Macoupin County. In January 2007, BPI started the process of obtaining permits for wells for dewatering purposes, and it drilled two wells on each property.

Illinois Department of Natural Resources (Department) regulations required BPI to notify the owner of the coal rights of its permit application for each well. BPI was aware that plaintiff had been the owner of the coal rights since late 2006, but it failed to notify plaintiff of any activity on the property until March 22, 2007, when it sent plaintiff a letter. BPI sent the letter because of the Department's regulation requiring the owner of the coal to be notified if the owner of the coal is different from the owner that originally executed the lease. Plaintiff filed its complaint for a declaratory judgment 18 days later on April 9, 2007.

Defendants filed a motion for a summary judgment, to which they attached copies of the deeds by which plaintiff had acquired its interest in the coal from the lessor in a bankruptcy sale. The deeds state, *inter alia*, that the transfer was subject to "the terms of the

2

Asset Purchase Agreement" approved by an order of the bankruptcy court, which order states that each purchaser in the bankruptcy sale shall take title subject to "Permitted Liens." Also attached to the motion for a summary judgment is a statement by defense counsel that the leases in question were included within the category of permitted liens. The "Asset Purchase Agreement" also contains a no-third-party-beneficiary provision. Bankruptcy documents were not provided by defendants. Instead, defendants provided the trial court with PACER records available on the Internet.

In further support of their motion for a summary judgment, defendants further provided affidavits stating that the consideration recited in each lease, "ONE dollar ($1.00) and other good and valuable consideration," had been paid and that as of May 14, 2007, BPI had expended $535,000 to third parties for testing. However, in his deposition, the general manager for Nytis and a signatory to the leases, Michael Robinson, recanted a part of his sworn statement and testified that no consideration had been paid for the leases at the time of their making, not even one dollar.

Ultimately, the trial court found that plaintiff's argument that the 99-year coal-bed-methane leases were void *ab initio* was premised on case law dealing with coal-mine leases from the past, which, while still good law, does not apply in today's "age of four[-]dollar[-]a[-]gallon gasoline." The trial court stated as follows: "The Court is not ignoring the rule of law [finding the leases void] but rather making an effort to recognize that where methane removal is concerned, a 99[-]year lease reciting one dollar in consideration[,] where defendant maybe [*sic*] characterized as not having to do anything but as in this case has already relied upon and partially performed[] (albeit not paid royalties) to the tune of $250,000 investment, are [*sic*] not void as against public policy or void for lack of mutuality or consideration." Accordingly, the trial court granted defendants' motion for a summary judgment and denied plaintiff's motion for a summary judgment. Plaintiff now appeals.

3

ANALYSIS

I

The issue raised in this appeal is whether the coal-bed-methane leases are valid and enforceable. Plaintiff contends that the leases in question are void *ab initio* because under the leases the lessee has no obligation to explore, produce, or pay anything to the lessor. Plaintiff argues that the leases in question are "royalty leases" or "pay if you mine leases," which for well over a century have been held to be unfair, unconscionable, and void as against public policy. Plaintiff insists that the term and the size of the leases here in question make them more egregious than any other reported case because if the leases are found to be enforceable, the result would be that the lessee would be able to freeze more than 64,000 acres of leased gas reserves for 99 years, holding them out of commerce at no cost to the lessee and no benefits to the owner of the mineral.

Defendants respond that the leases are not void royalty leases because the instant case is far removed from those cases relied upon by plaintiff and this situation in no way warrants the invocation of equity to extinguish the leases. Defendants insist that the leases are valid and enforceable and that due consideration was provided. Defendants further contend that plaintiff is estopped from disclaiming the leases because defendants are protected by their status as *bona fide* purchasers and because they have tendered significant resources in their efforts to bring the property in issue into production.

We first note that a summary judgment should be granted where there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. *Bass v. Prime Cable of Chicago, Inc.*, 284 Ill. App. 3d 116, 121, 674 N.E.2d 43, 47 (1996). On appeal from an order granting a summary judgment, our review is *de novo. USG Corp. v. Sterling Plumbing Group, Inc.*, 247 Ill. App. 3d 316, 318, 617 N.E.2d 69, 70 (1993). Here, both parties agreed that a summary judgment would be an appropriate disposition for this

4

case.

Plaintiff relies on the case of *Miller v. Moffat*, 153 Ill. App. 1 (1910), in which a 50-year royalty lease in Randolph County was held to be void *ab initio* for a lack of mutuality, based upon "an elementary principle of the law of contracts that if one party to a contract is under no obligation to perform at all the contract is void." *Miller*, 153 Ill. App. at 4. While the trial court recognized the relevance of *Miller* to the facts of the instant case, it refused to apply the law set forth in *Miller*. The trial court questioned the reasonableness of *Miller* in light of today's energy climate (*i.e.*, $4-per-gallon gasoline) and found that a ruling in favor of plaintiff in the instant case would be unreasonable.

However, as plaintiff points out, even if evidence had been submitted showing that gasoline was running $4 per gallon at that time, there should also have been evidence submitted showing the price of gasoline adjusted for inflation to 1979 prices when this court decided *Davis v. Nokomis Quarry, Inc.*, 77 Ill. App. 3d 1011, 397 N.E.2d 216 (1979). *Davis* held that an agreement for the payment of $1,000 per year made in 1967 for 60 acres satisfied the mutuality requirement. Most importantly, however, for purposes of this appeal, *Davis* recognized that the rule in Illinois is that royalty leases are void and unenforceable for a lack of mutuality (*Davis*, 77 Ill. App. 3d at 1013, 397 N.E.2d at 218), thus dispelling the trial court's assertion that the royalty lease rule is "old law" which is no longer relevant.

The trial court based its judgment on "today's energy market," especially the price of gasoline, but the instant case concerns two coal-bed-methane leases. The trial court questioned the applicability of the royalty rule, stating, "In other words, technology being what it is now, is a 99[-]year lease for the [r]ight to remove methane gas as unconscionable as perhaps a 99[-]year lease to remove coal was 25 years ago[?]" However, the trial court's distinction between coal leases and gas leases with regard to the applicability of the royalty lease rule was specifically rejected in *Miller* as follows:

5

"We are of opinion this agreement was void at its inception for want of mutuality. It is claimed by appellees that the authorities relied on by appellant refer to oil and gas contracts and such contracts are to be distinguished from contracts for the removal of coal or other solid minerals. Where the question involved is the alleged want of mutuality as it is here, the subject-matter of the contract is immaterial." *Miller*, 153 Ill. App. at 5.

The rule prohibiting royalty leases, while a well-known mineral law rule, is at its essence "an elementary principle of the law of contracts" (*Miller*, 153 Ill. App. at 4), and thus, an argument based upon a distinction between the types of minerals involved is not relevant.

Moreover, the trial court's assertion that old coal-mining lease cases pale in comparison to today's energy market and demand is not compelling. As plaintiff points out in its brief, if there is substantially more urgency for mineral production now than ever before, then the application of the rule prohibiting royalty leases is more important now than ever before. More than 150 years ago, *Lear v. Chouteau*, 23 Ill. 39 (1859), made it clear that if time is of the essence, a royalty lease contract should be the last type of contract for a lessor to consider:

"Nothing; absolutely nothing, and even worse than nothing, for by it his hands would be tied up so that he could not engage in other enterprises of a permanent character, but must ever stand with his hands folded, awaiting the pleasure of these gentlemen. In such a contract as this there is neither reciprocity, fairness[,] nor good conscience ***." *Lear*, 23 Ill. at 42.

That description is as relevant today as it was when *Lear* was decided. Here, the contract, if enforceable, would allow the lessee to do absolutely nothing with the leases for 99 years should the lessee so desire.

The doctrine of *stare decisis* is a basic tenant of our legal system. *Hoffman v.*

6

*Lehnhausen*, 48 Ill. 2d 323, 329, 269 N.E.2d 465, 469 (1971). *Stare decisis* reflects the policy of the courts " 'to stand by precedents and not to disturb settled points.' " *Zimmerman v. Village of Skokie*, 183 Ill. 2d 30, 47, 697 N.E.2d 699, 708 (1998) (quoting *Neff v. George*, 364 Ill. 306, 308-09, 4 N.E.2d 388, 390-91 (1936)). When a question has been deliberately examined and decided, it should be considered settled and closed to further argument. *Prall v. Burckhartt*, 299 Ill. 19, 41, 132 N.E. 280, 288 (1921). In general, a settled rule of law that does not contravene a statute or constitutional principle should be followed unless doing so is likely to result in serious detriment to public interests, and such a rule may only be disregarded for "good cause" or "compelling reasons." *Iseberg v. Gross*, 227 Ill. 2d 78, 101, 879 N.E.2d 278, 292 (2007).

II

Because the trial court ruled that the leases in question were not void *ab initio*, it did not rule on the other arguments raised by defendants, such as "estoppel by deed, detrimental reliance, partial performance, mutuality, consideration, etc." In this appeal, defendants continue to assert that there are valid reasons to enforce the leases and to ignore the long-standing rule voiding royalty leases. After careful consideration, we find that defendants have failed to provide good cause or compelling reasons to judicially abandon the long-standing rule voiding royalty leases.

For example, BPI asserts that it was a *bona fide* purchaser by way of the farmout agreement, so that it had no notice of any outstanding rights or claims of other persons and, therefore, the leases are somehow enforceable. However, we have already determined that the leases were void *ab initio*. Whether BPI was or was not a *bona fide* purchaser is irrelevant because the agreement is unconscionable and against public policy.

With respect to defendants' claim of partial performance and detrimental reliance, we point out that defendants have done little beyond some initial testing, which the trial court

7

found to cost $250,000. Given the amount of acreage involved in these leases, we agree with plaintiff that this is a relatively small amount. A great portion of the expenditures claimed by BPI consisted of salaries to company employees, which were never substantiated. Moreover, we point out that BPI did not notify plaintiff that it was going to perform the core tests until after they had been performed in violation of the Department's regulations. Accordingly, we decline to reward defendants for their alleged "partial performance" or grant them any type of equitable relief when they performed their activities in secret without notifying plaintiff of plans to conduct core tests.

Defendants also claim estoppel by deed, asserting that the deed by which plaintiff acquired the coal specifically stated that it was subject to an asset purchase agreement approved by a bankruptcy court and asserting that because the bankruptcy court order stated that each purchaser in bankruptcy was taking subject to permitted liens and the leases in question were included in the category of permitted liens, plaintiff is estopped to deny the validity of the leases. We disagree. The doctrine of estoppel by deed does not alter the fact that this was a void lease and does not alter the rights of the lessor or his grantee to have the deed declared void. Defendants have failed to convince us that a void lease becomes enforceable simply because it was recited to exist of record in a mineral conveyance.

Under the royalty leases, defendants never had any obligation to do anything. That fact still remains, as they have no obligation to do anything now. They can continue to sit on these leases and continue to do absolutely nothing for 99 years.

CONCLUSION

We recognize and adhere to the long-standing precedent in Illinois that royalty leases are void *ab initio*. Accordingly, we hereby reverse the order of the circuit court of Perry County granting a summary judgment in favor of defendants, and pursuant to Supreme Court Rule 366 (155 Ill. 2d R. 366), we enter a summary judgment in favor of plaintiff.

8

Reversed; judgment entered.


SPOMER and STEWART, JJ., concur.

NO. 5-08-0322

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

| | | |
|---|---|---|
| ICG NATURAL RESOURCES, LLC, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Perry County. |
| | ) | |
| v. | ) | No. 07-CH-20 |
| | ) | |
| BPI ENERGY, INC., f/k/a BPI Industries, Inc.; | ) | |
| ADDINGTON EXPLORATION, LLC; and | ) | |
| NYTIS EXPLORATION COMPANY, LLC, | ) | Honorable |
| | ) | James W. Campanella, |
| Defendants-Appellees. | ) | Judge, presiding. |

---

**Opinion Filed**:       April 1, 2010

---

**Justices**:       Honorable Richard P. Goldenhersh, P.J.

Honorable Stephen L. Spomer, J., and
Honorable Bruce D. Stewart, J.,
Concur

---

**Attorneys
for
Appellant**
    John E. Rhine, Rhine Ernest LLP, Old National Place, One Main Street, Suite 600, Evansville, IN 47708-1464

William A. Schmitt, Greensfelder, Hemker & Gale, 12 Wolf Creek Drive, Swansea, IL 62226 (**NO BRIEF FILED**)

---

**Attorneys
for
Appellees**
    Yvette C. Kirchoff, Jeffrey B. Kolb, J. David Roellgen, Emison, Doolittle, Kolb & Roellgen, P.O. Box 215, Vincennes, IN 47591; James L. Van Winkle, Van Winkle & Van Winkle, 301 S. Jackson Street, P.O. Box 337, McLeansboro, IL 62859-0337