DAY ET AL. V. SCHROEDER & LINDBLOM.

1. **Municipal Corporations**: VACATION OF STREET. Upon the vacation of a street, or any part thereof, the title to the land embraced in the street does not revert to the original owner, and his grantee cannot evict the owner of adjacent property who has taken possession of the land formerly constituting the street.

*Appeal from Winneshiek Circuit Court.*

WEDNESDAY, OCTOBER 3.

THE plaintiffs claim that they have the legal title in fee simple to, and that they are entitled to the immediate possession of, lot twenty-six, in railroad addition to Decorah.

The defendants deny that plaintiffs are the owners of the premises described, and that they are entitled to the possession thereof.

The parties entered into the following stipulation of facts, which sufficiently present their respective claims: "It is

stipulated that the title of that portion of the premises described in petition, not heretofore occupied by Pearl street, is, as shown by abstract of title attached to the petition, that the portion heretofore occupied as Pearl street was in Amos H. H. Perkins on July 7th, 1855; that on said day he dedicated the same to the public for street purposes, on the town plat of South Decorah, duly acknowledged and recorded in the recorder's office of said county; that on September 14th, 1869, the town council of Decorah passed an ordinance vacating that portion of said street comprising a part of the premises in controversy, as shown by abstract of title attached to plaintiff's petition; that on September 13th, 1869, Amos H. H. Perkins executed a quit-claim deed to plaintiff, as shown by abstract of title attached to the petition; that defendants are in possession of the premises heretofore occupied as Pearl street; that defendants, at the commencement of this suit, are owners of the lot lying next east of the premises in question, upon which there is erected a large brick elevator, operated as a grain elevator by defendants; that the portion of the bridge upon which teams had access to said elevator is on a portion of the lot in controversy; that the lot whereon said elevator was situated was deeded by plaintiffs to defendants' grantors; that, from the spring of 1873 up to the commencement of this action, a portion of the warehouse used in connection with said elevator was located upon a portion of the premises in controversy, heretofore dedicated as Pearl street; that the bridge leading to said elevator and the said warehouse were moved on by defendants' grantors with the knowledge of plaintiff, and that he made no objection thereto; that this warehouse and this bridge were used as an appurtenance to the elevator in question, at the time that the defendants received a deed of the property from their grantor; that said bridge is a plank way constructed for the purpose of admitting teams to drive up to the entrance of the elevator, and that the warehouse spoken of is a frame warehouse, set upon posts." In addition to this stipulation, plaintiff introduced proof of the rental value of the lot.

The cause was tried by the court, and judgment was ren-

dered for plaintiffs for the possession of the lot, and for $90 damages.

The defendants appeal. The appeal involves only that portion of the lot heretofore embraced in Pearl street.

*Willett, Wellington & Willett,* for appellants.

*Adams & Bullis,* for appellees.

DAY, CH. J.—Plaintiffs claim title to the property in controversy in virtue of a quit claim deed, executed on the 13th day of September, 1869, by the original proprietor of the town of Decorah, and an ordinance of said town, passed on the next day, vacating that portion of Pearl street, including the premises in dispute. The claim of plaintiffs is based upon the theory that upon the vacation of the street the title reverted to the original proprietor. Section 637 of the Code of 1851, under which the town of Decorah was laid out, provides: "The acknowledgment and recording of such plat is equivalent to a deed in fee simple of such portion of the land as is therein set apart for public use or is dedicated to charitable, religious, or educational purposes." The ordinance vacating a portion of Pearl street was passed in 1869. The Code of 1851 provides that any town plat may be wholly or in part vacated whenever the consent of all the property holders of the part to be so vacated and that of the people of said town can be obtained to that effect and that, upon such vacation, the portion set apart or reserved for public, charitable, religious or educational purposes shall revert to the original proprietor, his heirs or assigns, and the judge of the county court shall issue his proclamation accordingly. Secs. 643 and 647, Chap. 78, of the Laws of 1862, provide that the proprietor of a town plat, at any time before making sale of any lots therein, may declare such plat to be vacated, by executing a writing duly acknowledged as is required in respect to deeds and causing the same to be recorded in the office in which the plat or map was recorded; and in cases where lots have been sold, the plat may be vacated, by all the owners of lots in such town plat joining in the execution of such writ-

*[margin note:]* 1. MUNICIPAL corporations: vacation of street.

ing. Section three of this chapter provides that, " when any part of a town plat, or addition or sub-division of town lots shall be vacated as aforesaid, the proprietors of the lots so vacated may inclose the streets, alleys and public grounds adjoining said lots, in equal proportions." And section five of said chapter provides that, " for the purpose of assessing or conveying any of the lots described in any map or plat so vacated, the owner or owners of said lots may cause the same to be platted and numbered, in accordance with Sec. 1022 of the Revision of 1860, said lots including the proportionate parts of the adjacent streets, alleys and public grounds, all of which can be estimated and platted without re-survey by county surveyor." It seems quite apparent that, under the provisions of Chap. 78 of the Laws of 1862, upon the vacation of a town plat or part thereof, the title to streets, alleys and public grounds vests in the owners of adjoining lots, for section three provides that the owners of adjoining lots may inclose such streets, alleys, etc., in equal proportions, and section five provides that for the purpose of assessing or *conveying* such lots, the owners may cause them to be platted, *including the proportionate part of the adjacent streets, alleys and public grounds*. We need not determine whether it was competent for the legislature to take away the right of reversion which existed in the original proprietors of a town laid out under the Code of 1851; for it is evident that there has been no vacation of the whole or any part of the town plat, as contemplated either in Secs. 643 to 647 of the Code of 1851, or in Chap. 78 of the Laws of 1862. All that was done in this case was simply the vacation, by ordinance, of a part of a street. Did the title to the part of the street so vacated revert to the original proprietor? We think it did not. Section 670 of the Code of 1851 provides: "The city charter may also confer power upon the city authorities to open new streets, and discontinue old ones and to dispose of the ground thus rendered unnecessary to the public." This provision is altogether inconsistent with the notion that upon the vacation of a street the title reverts to the original proprietor, as in that case the charter could not authorize the city to dispose of it. Section

1064 of the Revision confers upon cities and towns power to lay off, open, widen, straighten, narrow or *vacate* streets, alleys and public grounds. In *Pettingill v. Devin,* 35 Iowa, 344 (357), it was held that the vaction of a part of a street, under a similar provision of the charter of the city of Ottumwa, did not cause a reversion of the part so vacated to the original proprietor. Sec. 670 of the Code of 1851, and Chap. 78 of the Laws of 1862, strongly support the correctness of that decision. The point was directly involved in that case, and it is decisive of this.

The plaintiffs acquired no title under the quit claim deed of Perkins, and hence they cannot recover. They must rely upon the strength of their own title, and not upon the weakness of that of defendants. The defendants cannot be evicted to make way for those having no better right.

REVERSED.