(No. 13420.—Reversed and remanded.)
JOHNSON S. PRALL, Appellee, *vs.* SAMUEL BURCKHARTT,
JR., *et al.* Appellants.

*Opinion filed June 22, 1921—Rehearing denied October 11, 1921.*

1. JURISDICTION—*when right of Federal government to property may be determined by suit in ejectment.* Except where Congress has so provided the United States cannot be sued, but the exemption does not apply to officers and agents of the Federal government who hold for public use the possession of property when sued by a person claiming to be the owner, and in such case the right of the government to the property may be determined by a suit in ejectment in a court of competent jurisdiction.

2. PLATS—*city takes determinable fee in streets and alleys under section 3 of Plat act.* Section 3 of the Plat act vests in the municipality not a fee simple title absolute to the streets and alleys on a plat but only a qualified, base or determinable fee, which may continue forever if the land continues to be devoted to the public use, and such fee is determined by the vacation of the plat.

3. SAME—*under section 2 of Vacation act the title to streets, upon vacation, passes to abutting owners.* A plat made and recorded in statutory form since the enactment of the Plat act and the Vacation act is subject to the provisions of both acts, and in case any street or alley is vacated, the title thereto, in the absence of any reservation by the dedicator, passes by way of conditional limitation, under section 2 of the Vacation act, to the then owners of the lots abutting thereon.

4. SAME—*section 2 of Vacation act is not unconstitutional.* The provision of section 2 of the Vacation act that upon the vacation of a street or alley the fee shall go to the abutting owners is not unconstitutional as taking from the dedicator his unreserved interest in the reversion without due process of law, as the legislature has authority to control by statute the character of the estate created by a dedication and a subsequent vacation. (*Gebhardt* v. *Reeves,* 75 Ill. 301, distinguished and criticised.)

5. SAME—*when dedicator who has made and recorded plat has no reversionary interest in the streets.* After a dedicator has executed and recorded a plat in conformity with the statute and there has been an acceptance, he has, in the absence of an express reservation, no reversionary interest in the streets which entitles him to the protection of any constitutional limitation.

6. CONSTITUTIONAL LAW—*legislature has authority to control character and quality of estates conveyed.* The methods of convey-

ancing and the character and quality of the estates thereby created are matters which are entirely within the control of the legislature, and the rules of the common law may be modified or abrogated without violating any constitutional limitations.

7. SAME—*when rule of stare decisis will not preclude review of constitutional question.* The rule of *stare decisis* will not prevent the courts from reviewing a constitutional question where the facts under review are different from those in the former decisions.

8. STARE DECISIS—*when the rule of stare decisis should not be adhered to.* The rule of *stare decisis* is founded upon sound principles of public policy necessary to the due administration of justice and should not be departed from merely because the court is of opinion that it would decide otherwise were the question a new one, but where the error of a previous decision is recognized the rule should not be followed if the principle established by the former decision is productive of greater mischief to the community than can possibly ensue from not following it.

9. SAME—*a decision overruling former construction of statute does not amount to law impairing obligation of contracts.* A judicial decision changing the settled construction of a statute is not equivalent to a law impairing the obligation of contracts, made in reliance on such previous construction.

STONE, C. J., and CARTWRIGHT and DUNN, JJ., dissenting.

APPEAL from the Circuit Court of Lake county; the Hon. C. C. EDWARDS, Judge, presiding.

CHARLES F. CLYNE, United States Attorney, JAMES R. GLASS, and MYER LINKER, for appellants.

PRINGLE & TERWILLIGER, for appellee.

Mr. JUSTICE CARTER delivered the opinion of the court:

The appellee, Johnson S. Prall, brought an ejectment suit in the circuit court of Lake county against the appellants, Samuel Burckhartt, Jr., and F. B. Carrithers, to recover possession of a number of pieces of land which originally comprised streets and alleys of a subdivision platted by the appellee, and upon a trial by the court without a jury there was a judgment for the appellee, from which this appeal is prosecuted.

Defendants filed a special appearance, alleging that they were not the owners of the property in question but were in possession thereof as officers of the United States army commanding at Fort Sheridan, and that the land at Fort Sheridan is occupied as a military post of the United States of America and is public property of the United States, and they thereupon moved to quash the summons. The motion was overruled, and the defendants afterward filed pleas alleging that they were commandant and adjutant, respectively, of the United States army occupying the premises as a military post, and that the suit was to all intents and purposes a suit against the United States and therefore could not be maintained. The plaintiff replied denying the ownership of the land by the United States, and upon a trial, judgment having been entered for the plaintiff, the defendants took a new trial under the statute and by leave of court filed a plea of the general issue, and upon the second trial the judgment appealed from here was entered.

Except where Congress has so provided the United States cannot be sued, but the exemption does not apply to officers and agents of the United States holding for public purposes the possession of property, when sued by a person claiming to be the owner. In such a case the right and title of the United States to the property may be determined by a court of competent jurisdiction and adjudged accordingly. In an ejectment proceeding involving the title to the Arlington estate, it was held in *United States* v. *Lee,* 106 U. S. 196, that ejectment being in its essential character an action of trespass, and the defendant not being sued as an officer but as an individual, the court was not ousted of jurisdiction because he asserted authority as an officer. *Stanley* v. *Schwalby,* 147 U. S. 519, was also an ejectment suit against army officers, and it was decided that the action could be brought against them as soon as they entered into possession of the ground claimed by the plaintiff, and therefore their plea of the Statute of Limitations was a

good plea. The same doctrine was laid down by this court
in *McConnell* v. *Wilcox,* 1 Scam. 344, which was an action
of ejectment in the circuit court of Cook county to recover
possession of land on which old Fort Dearborn was situ-
ated and where the title of the United States was in dis-
pute. The circuit court of Lake county had jurisdiction
in this cause.

The case was tried on an agreed statement of facts,
which was substantially as follows: June 21, 1889, the
plaintiff owned in fee a tract of land which he subdivided
into lots, blocks, streets and alleys and caused a plat of the
subdivision to be recorded on June 25, 1889. He sold part
of the lots, and he and all the other lot owners joined in
a vacation of the plat and made and recorded another plat
of the same subdivision later, in 1889. The streets and
alleys on the plat were accepted by the city of Fort Sheri-
dan, in which the subdivision was located. The United
States filed its amended petition in the United States dis-
trict court for the northern district of Illinois on August
3, 1906, describing the several lots in the subdivision and
the ownership of the same and praying for the ascertain-
ment of compensation to be paid for them. Most of the
lots had been sold but the plaintiff still owned some, and
he and the other owners were made defendants, as was also
the city of Fort Sheridan, which it was alleged had an in-
terest in the tract of land described in the petition, con-
stituting the public streets and alleys, either as owner in
trust for the public or as the owner of public easements
in the same. There was no averment that the plaintiff had
any right, title, interest or estate in the streets or alleys
and no attempt to condemn the same or ascertain compen-
sation therefor. There was a judgment fixing and award-
ing compensation for each one of the lots to the owner
and the compensation was paid, but there was no award
of compensation, either to the city of Fort Sheridan or to
the plaintiff, for any right or interest in the streets and al-

leys. The city of Highwood, which had succeeded the city of Fort Sheridan, on May 10, 1910, passed an ordinance vacating the streets and alleys constituting the land now in controversy. The defendants, as commandant and adjutant of the Fort Sheridan military reservation, were in possession of the land when this suit was brought, and claimed title by the condemnation proceedings.

It is conceded by counsel that no right in the streets and alleys on said plat was acquired by virtue of the condemnation proceeding. The petition did not allege that the appellee here had any right, title or interest, either in reversion or otherwise, in said streets and alleys, and no award of compensation was made to him for any interest.

The question whether or not the judgment of the trial court should be sustained depends very largely upon the validity of section 2 of chapter 145 of the Illinois Revised Statutes, in relation to the vacation of streets. That section provides that when any street, alley, lane or highway, or any part thereof, is vacated, the lot or tract of land immediately adjoining on either side shall extend to the center line of such street, alley, lane or highway, or part thereof, so vacated, etc. Appellee platted the land here in question and filed the plat of the subdivision on December 23, 1889, under the provisions of chapter 109 of the Revised Statutes. The provisions of the Plat act and the Vacation act heretofore referred to were both then in force and must be construed *in pari materia,* and it would seem to follow that appellee, in making and recording the plat of 1889, must be held to have done so in contemplation not only of the Plat act but also of the Vacation act. Section 3 of the Plat act provides, as it did then, that the execution and recording of a plat shall be held to be a conveyance to the municipality, in fee simple, of the streets and alleys shown on the plat. This court in construing that section has held that it vested in the municipality not a fee simple title absolute but a qualified, base or determinable fee,

which may continue forever but is determined by the vacation of the plat. The fee vests in the municipality so long, and only so long, as the land is devoted to the public use. (*Hunter* v. *Middleton,* 13 Ill. 50; *St. John* v. *Quitzow,* 72 id. 334; *Gebhardt* v. *Reeves,* 75 id. 301; *Helm* v. *Webster,* 85 id. 116; *Village of Hyde Park* v. *Borden,* 94 id. 26; *Matthiessen & Hegeler Zinc Co.* v. *City of La-Salle,* 117 id. 411.) The crux of the question here involved is whether, when a plat is vacated, the fee in the streets and alleys reverts to the dedicator or to the one who owns the adjoining land at the time of the vacation.

At common law the dedication of a street or alley passed to the municipality merely an easement. The dedicator still continued to own the fee, subject to the easement. A deed of an abutting lot passed the title to the center of the street,—or included the entire street, as the case might be,—burdened, of course, with the easement. If the street was abandoned or vacated by the municipality the abutting owner continued to hold his title to the center of the street just as he had held it before but now freed from the easement. It seems to have been early considered by the legislature of this State that the public interests would be better subserved if a municipality were to have a more complete control over its streets and alleys than was possible where it had only an easement therein. Accordingly, as far back as 1833 (Laws of 1833, p. 600,) the legislature passed an act embodying substantially the same provisions as those of section 3 of the Plat act, providing that the making and recording of a plat should be held to be a conveyance of the streets and alleys in fee to the municipality. Thereafter it was found that a new difficulty arose; that from time to time conditions changed, and that it might be desirable to vacate streets and alleys which had been dedicated by plat. The dedication and acceptance had vested a determinable fee in the streets and alleys in the municipality, and the question arose what was to become

of the title to the land included in such streets and alleys when they were vacated. This problem had arisen in construing deeds. Frequently the calls in a deed ran to a road and then "along said road." When later the road was abandoned or vacated the scattered heirs of the grantor would lay claim to the road, and, as was noted in a dissenting opinion in *Buck* v. *Squiers,* 22 Vt. 484, "a bootless,—almost objectless,—litigation shall spring up to vex and harass those who in good faith had supposed themselves secure from such embarrassment." This principle was favorably commented on by this court in *Gebhardt* v. *Reeves, supra,* where the court said (p. 307) : "His conveyance by operation of law carries the title to the center of the highway as a part and parcel of the grant, if there be no words of limitation. The fee is his to grant, and the rule is founded on a presumption that prevails as to the intention of the grantor as well as the policy of the law. No doubt the rule, in its practical operations, subserves the public good by preventing the existence of strips of land of no great value, formerly a part of the highway, but on the abandonment of which would induce profitless and vexatious litigation.—3 Kent, 433." To prevent the existence of such strips of land along highways and to discourage this bootless and annoying litigation, the courts adopted a rule that when a call in a deed goes to a monument it shall be construed as going to the center of the monument,—that is, a line which runs to a road was held to run to the center of the road, and the words "thence along said road" were held to mean "thence along the center of said road." Mindful, doubtless, of the litigation under such circumstances, the legislature in 1851 passed an act relating to vacations, and later, in 1865, passed the present Vacation act, which, with certain modifications, has since remained in force. The Vacation act was thus made as much a part of the statutory law relating to the making of plats and the devolution of the title to streets and

alleys shown thereon as the Plat act had been. The two acts were simply two parts of one and the same subject matter. Both acts were necessary to express the entire legislative will in respect to the devolution of the title to the streets and alleys shown on the plat. The intention of the legislature manifested by these two statutes—the Plat act and the Vacation act—seems perfectly plain and simple. So long as the strip of ground designated as a street on a statutory plat remained a street the determinable fee was to be vested in the municipality, but as soon as the street was vacated the title was to devolve in the same manner as it would have done if the plat were a common law plat. In this way it was manifest that all controversies over abandoned and vacated streets would be eliminated. In *Thomas* v. *Hunt,* 134 Mo. 392, the court, in speaking of a statute with substantially the same provisions, said: The statute "is founded upon the same principle of public policy as the rule which under other circumstances vests in the abutting owners, respectively, the title to the center of the street." If both the Plat act and the Vacation act be construed *in pari materia,* all plats thereafter made must be construed under both acts, and the dedicator, by the making and recording of the plat in statutory form, grants to the municipality the title to the streets and alleys shown upon the plat, to have and to hold the same in fee so long as the same shall be used for streets and alleys, but upon condition that in case any street or alley shall be vacated, then the title thereto shall pass, by way of a conditional limitation, to the then owners of the lots abutting thereon.

The legislature has the authority to provide by statute that a fee may be limited upon a fee by deed. The methods of conveyancing and the character and quality of the estates thereby created are matters which are entirely within the control of the legislature. This control is not circumscribed by any constitutional limitations, and there is nothing sacred about the rules of conveyancing which ob-

tained at common law. The legislature may alter or annul any of those common law rules at pleasure, and our legislature, in fact, has many times modified them. Thus, at common law a deed to A without words of inheritance conveyed a life estate and left a reversion in the grantor, which, if not otherwise disposed of, descended to his heirs. (*Jones* v. *Bramblet,* 1 Scam. 276; *Edwardsville Railroad Co.* v. *Sawyer,* 92 Ill. 377; *Lehndorf* v. *Cope,* 122 id. 317.) Section 13 of the Conveyance act provides that words of inheritance shall no longer be necessary to convey a fee simple; that a deed without words of inheritance conveys a fee unless a less estate is limited by express words or by construction or operation of law. The constitutionality of this section of the Conveyance act has never been questioned in the courts of this State, so far as we are advised.

At common law, also, a deed to two or more persons created a joint tenancy with the right of survivorship. (*Svenson* v. *Hanson,* 289 Ill. 242.) The Illinois statutes have changed this rule, and provided that such a deed should create a tenancy in common unless it was expressly declared in the deed that it was the intention to create a joint tenancy. Section 6 of the Conveyance act has also changed the common law with reference to estates tail. The principle involved in these statutes in changing the common law rule as to conveyances of property or real estate has never been held unconstitutional on the ground that it deprives an interested party of property without due process of law. (See to same effect, Kales on Estates and Future Interests,—2d ed.—sec. 293.) By the same line of reasoning it would seem to follow that section 2 of the Vacation act does not deprive the dedicator who made the plat of any constitutional rights in that regard. The principles involved in the construction of section 13 of the Conveyance act would appear to be on all-fours with those involved in the construction of section 2 of the Vacation act. Both the Plat act and the Vacation act are necessary to express

the legislative intention in respect to the devolution of the title to the streets and alleys shown on the plat. Under the provisions of these two acts the dedicator, in making a plat in conformity with such provisions, parts with all of his title to the ways shown on the plat. He grants the title to the streets, alleys and ways under the provisions of the Plat act to the municipality, to have and to hold the same so long as the same shall be used for streets, alleys and ways. Under the provisions of section 2 of the Vacation act, in case the streets shall be vacated, then the title thereto passes, by way of a conditional limitation, to the then owner of the lots abutting thereon. Just as under section 13 of the Conveyance act, upon the happening of the future event,— the death of A,—the reversion was made to pass to A's heirs or assigns, so, here, upon the happening of the future event, to-wit, the vacation of the streets and alleys, the title is made to pass to the owners of the abutting property. (See the reasoning of this court in *Roberts* v. *Dazey,* 284 Ill. 241.) In upholding the validity of a similar statute the Supreme Court of Missouri in *Thomas* v. *Hunt, supra,* said, on page 402: "It is entirely competent for the legislature to prescribe the legal effect of the voluntary dedication of streets and to prescribe the quantity of interest in the streets the dedicator parts with as well as that taken by the public." Similar reasoning is used in discussing the Plat act and the Vacation act of this State in Kales on Estates and Future Interests, (2d ed.) last paragraph of section 293. After the dedicator has executed and recorded the plat in conformity with the statute and there has been an acceptance, he has neither a reversion nor a possibility of reverter in the streets. He has completely disposed of all of his interest. When, then, the street is afterwards vacated, the dedicator, having no interest of any kind therein, is not deprived of any property without due process of law. The proprietor, by reason of dedicating a part of the premises for streets, enhances the value of

the lots to which such streets give access. His grantees pay
the enhanced value, and the proprietor thereby receives a
consideration not only for the precise amount of the land
described in each lot, but also, in effect, for that embraced
in the street upon which the lots abut. Having been once
paid for the land embraced in a street he ought not to be
permitted, on vacation, to assert title thereto as against one
who has paid him the consideration therefor. (*Olin* v. *Denver and Rio Grande Railroad Co.* 25 Colo. 177.) The same
conclusion seems to have been reached in construing similar
statutes in other jurisdictions. (See *Challis* v. *Depot and
Railroad Co.* 45 Kan. 398; *Railway Co.* v. *Showalter,* 57
id. 681; *Day* v. *Schroeder,* 46 Iowa, 546; *Scudder* v. *Detroit,* 117 Mich. 77; *Vacation of Public Road,* 5 Pa. Dist.
771.) As a matter of original construction, under a long
line of decisions of this State on similar questions, beyond
doubt this would be the fair, reasonable, equitable and constitutional construction of the provisions of the Plat act and
section 2 of the Vacation act. However, it is strenuously
urged by counsel for appellee that this court has held unconstitutional the provisions of section 2 of the Vacation
act in various decisions. It therefore becomes necessary
to consider whether those decisions have so held. We will
refer to them briefly.

In *Canal Trustees* v. *Haven,* 11 Ill. 554, and *Hunter* v.
*Middleton, supra,* there had been no vacation of the streets
therein involved and therefore no question arose as to the
devolution of title to vacated streets. In both of these cases
this court held that by the making and recording of the
plats the legal title to the streets shown thereon became
vested in the municipality. Where the title to the streets
would go on vacation, the court in the *Haven case* declined
to discuss, and in the *Hunter case* said, on page 54: "The
title may, perhaps, revert to the former owners   *   *   *
on the abandonment of the   *   *   *   streets." This statement, of course, shows that the opinion did not decide the

question involved and that the statement as to where the title would "perhaps" go on the abandonment of the streets was dictum.    Both of these decisions were decided long before the Vacation act of 1865 was passed and with reference to two plats made in 1825 and 1835, respectively, where there had been no attempt shown to vacate the streets thereon.

In *St. John* v. *Quitzow, supra,* the facts are somewhat obscurely stated in the opinion, but it would seem that when Mrs. St. John conveyed lot 63 in question, "she expressly reserved the right in the deed to vacate the streets, which is equivalent to a reservation of all her title thereto." The street in question was vacated in 1869, and Quitzow claimed that under the act of 1865, he, as the owner of that part of lot 63 abutting thereon, was entitled to hold to the center of the street.    The court held this untenable, apparently because Mrs. St. John in making her deed had expressly reserved the right to vacate the street, and this right was equivalent "to a reservation of all her title thereto," and, of course, a title so expressly reserved by her, the opinion held, "could not be divested by direct legislative action."

In *Gebhardt* v. *Reeves, supra,* the court construed the Vacation act of 1851, which gave the municipality, upon vacation, the power to quit-claim the interest of the city in the vacated street to the abutting property owners, and held that the only authority given the city by the act was to release to the abutting owners the city's interest in the vacated street, (an interest which, under the decisions of this court, ceased at the time of the vacation,) and that the act did not purport to authorize the city to grant the fee in the street for private purposes.    The court was undoubtedly right in so holding, but it is argued that the opinion in that case passed on the vital question in this case and has been referred to with approval on this last point by this court in other decisions, so that, it is insisted, unless that decision is overruled the decision of the trial court in this

case must be sustained. As the reasoning in that case is considered conclusive on the point here involved, we will later take up and discuss the facts there involved and the reasoning of the court at some length. It may, however, be noted in this connection that it is assumed on page 306 of the opinion in that case that the decisions of this court in *Hunter* v. *Middleton, supra,* and *St. John* v. *Quitzow, supra,* decided the exact question involved and were therefore controlling. From what has already been said it is clear that this court never intended to decide this question in the *Hunter case,* and that the facts were so different in the *St. John case* that that opinion cannot be held conclusive on the question here before us.

In *Helm* v. *Webster, supra,* one Holmes conveyed a strip of ground to the city of Quincy in 1855 to be used for a street, it being provided in the deed that in case the street was vacated the title should revert. Afterwards the legislature passed the Vacation act of 1865. Subsequently the street was vacated, and this court held that the legislature could not by the subsequent enactment deprive the dedicator of his property. But in that case Holmes had expressly reserved the reversion in his deed of 1855 as a condition of the grant, and the court did not hold or intimate that section 2 of the Vacation act was void when applied to a street dedicated by a plat made subsequent to 1865 and afterwards vacated. While the court in that case did quote with approval the doctrine laid down in *Gebhardt* v. *Reeves, supra,* we shall show hereafter that the reasoning in support of that doctrine as laid down in the *Gebhardt case* was in a large measure, if not entirely, unsound.

In *Village of Hyde Park* v. *Borden, supra,* the dedication of a street was made in 1852, before the present Vacation act was passed, and the street was vacated February 16, 1865. The decision, therefore, could have no bearing upon the construction of the Plat act or the Vacation act.

In *Matthiessen & Hegeler Zinc Co.* v. *City of LaSalle, supra,* a controversy arose in respect to the rights in streets dedicated by a plat made by the commissioners of the Illinois and Michigan canal under the acts of 1836 and 1837. This court there decided that the fee of such streets was in the municipality and that the owners of lots abutting thereon had no right to tunnel under the streets for the purpose of mining coal or other minerals. There had been no vacation of any of the streets involved and therefore the provisions of section 2 of the Vacation act had nothing to do with the controversy before the court. This court, however, did say in that case something that was unnecessary for the decision there involved, on page 418: "The title vested in the town by the statutory dedication is absolutely for the purpose of the statutory trust until the street shall be subsequently vacated, when it will revert to the dedicator, or, it may be, in cases like the present, to the adjacent lot owner. Possibly at some time in the future there may be a reverter, but this is no reversion." It is plain from that statement that the court at that time did not consider that the former decisions of the court, including *Gebhardt* v. *Reeves, supra,* had positively decided that on the vacation of streets under the Vacation act of 1865 or the Vacation act now and then in force the title to the vacated property would necessarily revert to the dedicator.

In *Hamilton* v. *Chicago, Burlington and Quincy Railroad Co.* 124 Ill. 235, the streets under consideration were offered to be dedicated by a plat made and recorded in 1835 and were vacated by an ordinance passed in 1871. It appeared that the streets and alleys had never been accepted by the municipality, and this court held that the title thereto never became vested in the city but the conveyance of the abutting lots carried to the grantees the title to the streets and alleys, and that upon vacation such title became perfect in the abutting owners, freed from the easement. The decision has no application to the question of the validity

of section 2 as applied to plats made subsequent to 1865, first, because there seems to have been no acceptance of the streets in that case and the title thereto never became vested in the city and the plat never became a complete statutory plat; and second, because the plat was made in 1835, before the passage of the act of 1865.

In *Hill* v. *Kimball,* 269 Ill. 398, there had been a vacation by Highland Park of a large number of streets and alleys in a subdivision of that city. Hill filed a bill to enjoin the closing of the vacated streets and alleys on the ground that the vacation ordinance was void, and that, even if the vacation was valid, he had a special or private easement in the vacated ways distinct from the public easement. It was stipulated that the plat was a statutory plat. It appeared that Kimball not only owned practically all of the abutting lots, but that he also had a deed to the vacated streets and alleys from the original subdivider, made subsequent to the vacation. The particular mode by which Kimball became vested with the title to the vacated streets was a matter of slight importance, and the validity of section 2 of the Vacation act was not a controverted point in the case. The court in that case, without any discussion and without specifically referring to section 2, held that the fee of the vacated street in a statutory plat reverted to the dedicator, his heirs or assigns, and that neither the legislature nor the city could divest him of such title, citing *Gebhardt* v. *Reeves, supra, Helm* v. *Webster, supra,* and *Village of Hyde Park* v. *Borden, supra.* That last question was not involved in that case, and therefore the reference to the former decisions on the question here under consideration was necessarily dictum.

It is not argued by appellants that if a street is granted to a municipality by deed on condition that if it is vacated the title shall revert to the grantor, or if other rights are reserved in the deed, the title thereto will pass to the abutting property owners notwithstanding such conditions or

reservations. The Vacation act was never intended to apply to such cases. Appellee is not entitled to claim any protection by reason of any decision of this court rendered since his plat was executed and recorded, in 1889. (*Oliver Co. v. Louisville Realty Co.* 156 Ky. 628.) In *People v. Chicago and Northwestern Railway Co.* 239 Ill. 42, the legislature in 1853 passed an act authorizing the city of Chicago to vacate certain streets in a subdivision laid out by the canal commissioners and to convey by deed the interest which said city "may have had" in the streets vacated. The court there held the act of 1853 valid on the ground that the State might dispose of its property in any way it saw fit. That decision has no direct application to the facts in this case.

We have now referred to and stated briefly the holdings in the decisions of this court which seem to have a direct bearing on the issue here involved, and under which counsel insist this court is bound in this case, on the doctrine of *stare decisis,* to uphold the judgment of the lower court. Before passing on that vital question we desire to refer at some length to the reasoning of this court in *Gebhardt v. Reeves, supra.*

Reeves' subdivision, which was involved in the *Gebhardt case,* was recorded in June, 1856, and certain alleys and streets therein were vacated by an ordinance passed by the city of Chicago in August, 1864. The Vacation act of 1851, which was in force at the date of this vacation ordinance, passed in 1864, provided that upon the vacation of a street the corporate authorities of the city shall have power "to convey, by quit-claim deed, all interest which the city may have had in the street or part of street so vacated to the owner or owners of lots and lands next to and adjoining the same." (Laws of 1851, p. 112.) Assuming for the sake of argument that the plat in that case was a statutory plat, upon the recording of the plat and acceptance of the streets and alleys by the city a base or deter-

minable fee to the streets and alleys became vested in the
city. Upon the vacation of the streets and alleys in ques-
tion in the *Gebhardt case* the title of the city thereto, un-
der the Vacation act of 1851, ceased, and upon that vacation
the city was not empowered to convey the fee to the streets
and alleys vacated but was authorized by said act only to
convey by quit-claim deed all interest which the city "may
have had" in the streets and alleys vacated. By the terms
of that act, upon vacation the title of the city to the va-
cated streets and alleys absolutely determined, and even if
the city made a quit-claim deed conveying the streets and
alleys to the abutting lot owners, the determinable quality
of the title would follow the title into the hands of the
grantees. (*Lee* v. *Roberson,* 297 Ill. 321.) The court in
its opinion in the *Gebhardt case* therefore correctly inter-
preted the act of 1851 and correctly applied the law and
held that the act did not give to the city the right to con-
vey the fee. The court also held that under the provisions
of the Plat act the title to the streets vested in the munici-
pality a base or determinable fee and the title thus vested
may endure forever, or, as said in the opinion (p. 306):
"Until the municipality shall elect to abandon the use of
the streets and alleys the former owner has no interest
whatever in the land embraced within them,—absolutely
nothing, within any definition of estate or property, that
he could sell and convey. It had all passed to the corpo-
ration by the former grant, subject only to the possibility
it might revert to him if the contingency ever happened the
municipality should ever abandon the trust." Thereafter,
after the execution and recording of a statutory plat and
acceptance of the streets and alleys by the municipality
nothing remained in the dedicator but a mere possibility
of reverter. This possibility of reverter is not an estate,
but is only the possibility to have an estate at a future time.
(*Hart* v. *Lake,* 273 Ill. 60.) It is inalienable; not assign-
able; not subject to be sold on execution, and not devis-

able unless made so by statute. (*North* v. *Graham,* 235
Ill. 178; 21 Corpus Juris, 1018.) "It is well settled that a
mere expectation of property in the future is not a vested
right, and may be changed, modified or abolished by legis-
lative action." (*McNeer* v. *McNeer,* 142 Ill. 388.) In
the *McNeer case* the court was considering the estate of
tenancy by the curtesy initiate as it had existed under the
Married Women's act of 1861. The court held that until
curtesy became consummate by the death of the wife it
was a mere expectancy and not an estate, and that there-
fore the act of 1874, which abolished curtesy, was constitu-
tional when applied to curtesy initiate under the act of 1861.
The same doctrine laid down in the *McNeer case* was ap-
proved in *Butterfield* v. *Sawyer,* 187 Ill. 598, and is in ac-
cord with the reasoning of this court in *Henson* v. *Moore,*
104 Ill. 403, where the court held that the inchoate right
of dower was a mere expectancy and therefore not a vested
interest.

It seems clear, therefore, that the possibility of reverter
in the streets which remains in a dedicator after the mak-
ing of a statutory plat, even if the reasoning in *Gebhardt*
v. *Reeves, supra,* should control, is not an estate and is not
protected by any constitutional limitation; that it is per-
fectly competent for the legislature to abolish this possibil-
ity of reverter or to change the devolution of title upon
the happening of the future contingency in any way it may
see fit. So it would seem that the reasoning in the *Gebhardt
case* that the interest the original dedicator had in the street
after the vacation of the plat could not be constitutionally
divested and transferred to the adjacent land owners by
direct legislative action was not in harmony with the rea-
soning of this court as to the interest which the original
dedicator had in the land and the right of the legislature
to divest it.

The reasoning of the court in *Gebhardt* v. *Reeves, su-
pra,* has been also greatly weakened in other respects. The

court assumed that the statutory plat in that case was bind-
ing even though it had been made only in substantial com-
pliance with the requirements of the statute. The plat there
appears to have been made by a surveyor who was not a
certified county surveyor, and the court held that such a
plat was a good statutory plat. This part of the decision
was later in terms overruled in *Village of Auburn* v. *Good-
win,* 128 Ill. 57, the court basing its conclusion upon *Trus-
tees* v. *Walsh,* 57 Ill. 363, and *Thomas* v. *Eckard,* 88 id. 593.
The doctrine of the *Village of Auburn case* was approved
by this court in *Russell* v. *City of Lincoln,* 200 Ill. 511,
and the doctrine of the *Gebhardt case* that when a plat
has been executed, certified, acknowledged and recorded
in substantial compliance with the statute the title to the
streets and alleys designated thereon vests in the municipal-
ity in trust for the public has been substantially repudiated
in every subsequent case involving the question as to the
statutory requirements that must necessarily be followed in
order to uphold a statutory plat. (See *Ryerson* v. *City of
Chicago,* 247 Ill. 185.) Beyond question, under repeated de-
cisions of this court, the holding of the court in the *Gebhardt
case* that the plat was a valid statutory plat was a mistaken
conclusion, and it necessarily follows, therefore, that the
court was not required to pass upon the question whether
the title to the streets and alleys should go to the original
dedicator or to adjacent lot owners. If the court had held
that the plat was not a statutory plat, in accordance with
the now settled rule of this court, because not having been
made by the proper authority, the crucial question would
have been disposed of and all that was said thereafter by
the court could be considered dictum and not necessary to
the decision of the case and should now only be followed
by the court so far as the reasoning was sound.

The correctness of the holding of this court in *Gebhardt*
v. *Reeves, supra,* as to the rights of the original dedicator
of the streets and alleys in the plat where the streets are

vacated either under the act of 1865 or 1874 has been ques-
tioned and has not always received the approval of law
writers on the question. In Kales on Estates and Future
Interests (2d ed. sec. 293,) there is a quotation from the
*Gebhardt case* as follows (p. 307) : "The fee plaintiff had
in the street and alley could not be divested and transferred
to the adjacent lot owners by direct legislative action, nor
could authority be given to any agency to do it for private
purposes." The author then comments : "The court speaks
of this legislation as if it amounted to taking the property
of one man and transferring it to another without compen-
sation. Such language was intelligible in *St. John* v. *Quit-
zow,* where the dedication had been made prior to 1851, but
in *Gebhardt* v. *Reeves,* where the court recognizes that the
dedication was made after the law of 1851 went into force
such language is unintelligible. If applied in the slightest
degree to other legislation it would require some curious
results. Why, for instance, would it not make a statutory
dedication invalid to pass a fee simple to the municipality?
At common law the dedication gives the public only an
easement over the land. Why, then, does not the statute
deprive the dedicator of his property and transfer it to an-
other without compensation? If the legislature may to a
limited extent take the fee out of the dedicator upon a
statutory dedication, why may it not take it out of him to
the whole extent? And in that case, of what consequence
is it to him what becomes of it? If the legislature has no
power to give a certain legal effect to the dedication, how
has it any power to give a particular legal effect to what,
under the statute *de donis,* would be an estate tail?"

What has heretofore been said with reference to *Geb-
hardt* v. *Reeves, supra,* and the other decisions where the
question here under consideration was directly or indirectly
referred to, would seem to show quite clearly that the con-
stitutionality of the Vacation act with reference to a plat
made after the acts in question were in force was not de-

cided by the court in any of those decisions, or if decided
was absolutely unnecessary for the decision of the ques-
tions involved.  It may be frankly admitted that there are
expressions in some of the decisions relied upon that lend
support to counsel's position that the court has heretofore
intimated that section 2 of the Vacation act is unconstitu-
tional, but in our judgment this is the first time that the
constitutionality of this act has been squarely in the record
and necessary for the consideration and decision of this
court, and we are confronted with the proposition whether
we should follow what is dictum in those cases in construing
section 2 of the Vacation act and thus follow an erroneous
construction of said act.   This court has said:  "It is highly
important that the decisions of the court affecting the right
to property should be uniform and stable; but cases will
sometimes occur in the decisions of the most enlightened
judges where the settled rules and reasons of the law have
been departed from, and in such cases it becomes the duty
of the court, before the error has been sanctioned by re-
peated decisions, to embrace the first opportunity to pro-
nounce the law as it is."   (*Frank* v. *Darst,* 14 Ill. 304.)
The *McNeer case, supra,* is a case particularly in point in
support of the reasoning just given.   In that case the court
overruled the decision of *Russell* v. *Rumsey,* 35 Ill. 362,
which had been followed in *Rose* v. *Sanderson,* 38 Ill. 247,
and *Steele* v. *Gellatly,* 41 id. 39, notwithstanding the deci-
sion in the *Russell case* had stood unchallenged for twenty-
eight years, and notwithstanding the opinion in that case
squarely decided the question involved that inchoate dower,
although only an expectancy, was as completely beyond leg-
islative control as an estate.   In *Chicago, Danville and Vin-
cennes Railroad Co.* v. *Smith,* 62 Ill. 268, the court discussed
at some length the doctrine of *stare decisis* and authorities
in other jurisdictions that bear on that subject where a con-
stitutional question is involved, and from that discussion
we think it may be fairly said that the conclusion of the

court was that the rule of *stare decisis* will not prevent the courts from reviewing a constitutional question where the facts in the instant case are slightly different from those in former decisions. In *Arnold* v. *Knoxville,* 115 Tenn. 195, the court considered the same doctrine as to the necessity of recognizing to the fullest extent and adhering to that doctrine in passing upon and construing the provisions of the organic law, but stated that when it is clear that the court has made a mistake it "will not decline to correct it, even though it may have been re-asserted and acquiesced in for a long number of years." In *Paul* v. *Davis,* 100 Ind. 422, the court said (p. 427) : "The law is a science of principles, and this cannot be true if a departure from principle can be perpetuated by a persistence in error." In *Propeller Genesee Chief* v. *Fitzhugh,* 53 U. S. 443, the court said (p. 456:) "It is the decision in the case of Thomas Jefferson which mainly embarrasses the court in the present inquiry. We are sensible of the great weight to which it is entitled, but at the same time we are convinced that if we follow it we follow an erroneous decision into which the court fell when the great importance of the question as it now presents itself could not be foreseen, and the subject did not, therefore, receive that deliberate consideration which at this time would have been given to it by the eminent men who presided here when the case was decided." See, also, on this same subject, *Ellison* v. *Railroad Co.* 87 Ga. 691, and *Imperial Securities Co.* v. *Morris,* 57 Colo. 194.

Counsel for appellee argue in this connection that if section 2 of the Vacation act is now held valid it will cause great confusion in titles. For a long period of years this court has held with consistent rigor that a plat, unless made and recorded in strict conformity with the statute, was not a statutory plat. (*Ryerson* v. *City of Chicago, supra.*) It is recognized by all those who have had any experience in the matter that usually vacations of plats are made at the instance of abutting property owners, and that before carry-

ing through such vacation proceedings they will ascertain with some care whether or not the original dedicator has any interest in the title, and if there be any question on that point and they cannot secure quit-claim deeds from the dedicator or his heirs, they will establish the title to the property under the streets and alleys, before vacating them, by appropriate court proceedings. It would hardly seem, therefore, that the laying down of the correct rule as to the proper construction of the Plat act and the Vacation act would cause any great confusion or much litigation as to the question of titles to the vacated strips. While it may, perhaps, be fairly said that former decisions of this court have cast doubt upon the validity of section 2 of the Vacation act, it would seem clear from the previous discussion in this opinion that this court has never squarely decided that question where the constitutionality of the act was necessary for decision of the case. Where the error of a previous decision is recognized, the question whether or not the rule of *stare decisis* shall be followed becomes a simple choice between relative evils. The rule should be adhered to unless it appears that the principle established must be productive of greater mischief to the community than can possibly ensue from not following previous decisions on the subject. (7 R. C. L. 1009.) The rule of *stare decisis* is founded largely on considerations of expediency and sound principles of public policy, it being indispensable to the due administration of justice, especially by a court of last resort, that a question once deliberately examined and decided should be considered as settled and closed to further argument, and the courts are slow to interfere with the principle announced by the decision and it may be upheld even though they would decide otherwise were the question a new one. (15 Corpus Juris, 918.) In view of what has already been said we can reach no other conclusion than that the evils arising from adhering to any former statements in the opinions as to the unconstitutionality of section 2 of the Vaca-

tion act will be greater than would arise hereafter by giving a correct construction to that act.

The suggestion seems also to be made that a change of judicial decision as to the construction or validity of a statute now is an impairment of the obligation of a contract within the meaning of the Federal constitution. We do not think that question is involved in this case. Moreover, "a judicial decision changing the settled construction of a statute as declared by the highest court of the State is regarded by some authorities as equivalent to a change in the statute itself, and therefore as a law impairing the obligation of contracts made in reliance on the previous construction. This view, however, after a good deal of confusion in the decisions, has been finally repudiated by the United States Supreme Court, and the rule has been established that even a decision of the highest court of a State overruling a previous decision construing a statute and declaring void a contract made in reliance on the previous decision does not constitute a law impairing the obligation of contracts. Cases of the United States Supreme Court in apparent conflict with this view are explained on the theory that they were cases originating in the Federal courts, and, jurisdiction having been acquired on other grounds, the Supreme Court, in the exercise of its co-ordinate jurisdiction to construe the State law, chose to follow the earlier rather than the later decisions of the State courts as the correct exposition of the law." (12 Corpus Juris, 990.) This question has been decided in accordance with the doctrine thus laid down in Corpus Juris, in *National Mutual Building Ass'n* v. *Brahan,* 193 U. S. 635.

In view of our conclusion that section 2 of the Vacation act is valid and must be construed *in pari materia* with the Plat act, under which this plat was made and dedicated by appellee, and that section 2 of the Vacation act is not unconstitutional, the conclusion follows that the circuit court wrongly entered judgment in this case in favor of appellee.

The judgment of the circuit court will therefore be reversed and the cause remanded for further proceedings in harmony with the views herein expressed.

*Reversed and remanded.*

. STONE, C. J., and CARTWRIGHT and DUNN, JJ., dissenting.