MUNICIPALITY OF RÍO PIEDRAS, Petitioner and Appellee, v. RÍO PIEDRAS DEVELOPMENT CO., INC., Defendant and Appellant.

No. 9808.   Argued January 10, 1949.—Decided February 24, 1949.

---

558

*E. T. Fiddler, José G. González, Tomás I. Nido,* and *Mariano Canales,* for appellant. *Rubén Gaztambide Arrillaga* for appellee.

MR. JUSTICE SNYDER delivered the opinion of the Court.

In 1947 the Municipality of Río Piedras filed an information of *dominio* in the district court praying for a declaration of title and recordation in its name of four urban lots of 612, 523, 676 and 487 meters, valued at $9,000, $8,000, $10,000 and $10,000, respectively. The Municipality alleged that it acquired these lots by "purchase or exchange" from doña María Asunción Córdova in 1852; that they are not recorded in the Registry; and that it has been in peaceful and public possession thereof as owner for ninety-six years.

Río Piedras Development Co., Inc. filed an opposition contending that it owns the four lots in question. It agrees with the Municipality that Mrs. Córdova owned the land in controversy, in the 1850's. But it argues that it and not the Municipality is the successor in interest of that lady. It alleges that these lots were once a part of a ninety-six-cuerda farm belonging to Mrs. Córdova which was sold to Manuel González Fernández in 1861; that after the latter made various segregations therefrom, his heirs acquired title by

inheritance to the remainder; that as a result of further segregations by the heirs of González, the farm was reduced to nine cuerdas, which includes the four lots in controversy; that the nine cuerdas were acquired in 1947 by Río Piedras Development Co., Inc. by a deed from the heirs of González.

The case was tried in the district court without any substantial dispute as to the relevant facts. The Municipality has been in possession of these four lots since the 1850's. It went into possession by virtue of an *Acta* of the Municipal Board of Río Piedras of October 31, 1850.[1] Once the Municipality obtained possession, it used the land as a cemetery. Gradually this use was abandoned. In 1942 no further trace of a cemetery remained. Two streets were constructed which divided the property into the four lots in-

---

[1] The *Acta* reads as follows:

"At Río Piedras, on October 31, 1850, a special session was held by the members of the Municipal Board, noted in the margin, and the President of the Board informed the corporation that while there was pending for rendition to the Superior Government of this Island the last resolution adopted by the Board at a meeting held on the sixteenth of the present month concerning the repair of the cemetery of this town, he had received a communication from his Excellency the Governor and Captain General, dated the eighteenth of the present month, where *His Excellency orders the removal of the Cemetery to another point on the land of Doña María Asunción Córdova*, as provided by his Government on March 13 of the past year 1849, recommending the expedition of the transaction of this business in order that the aforesaid removal be accomplished as soon as possible. By virtue thereof and Doña María Asunción Córdova being present, they agreed, the corporation and the aforesaid lady, that *Doña Asunción cedes to the corporation three-fourths of a cuerda of land belonging to her in order that the new cemetery be situated thereon at a point chosen by the Board as the most appropriate, and that the only compensation for this donation will be the site occupied at present by the cemetery.* The corporation subsequently agreed to appoint Don Miguel Delgado, as an expert in the matter, in charge thereof in order that he should make the drawings, plan and budget for the new cemetery in accordance with the instructions that he would receive from Assemblyman Don R. González, who is appointed in charge by this Board, recommending great haste in order to comply with the wishes of the Superior Government to whom a copy of this agreement will be sent. The meeting was adjourned. It was signed by the President and Trustee and also by Doña María Asunción Córdova before me, to which I certify. Arturo O'Neill—Manuel L. García Síndico—Ma. Asunción Córdova—Carlos Andino, Sec." (Italics ours).

volved herein, which the Municipality in 1946 offered for sale at public auction.

Based on these facts, the corporation argued in the district court that it had title to the four lots and was now entitled to possession thereof. Its reasoning on this point may be summarized as follows: The *Acta* of 1850 shows that Mrs. Córdova donated these lots to the Municipality for dedication to the public use as a cemetery. The Municipality has ceased using the land as a cemetery. The law of dedication to public use is that title to land so dedicated always remains in the donor; if the public use to which the land is dedicated ceases, possession of the property reverts to the donor or his successor in interest. As the corporation is the successor in interest of the donor, Mrs. Córdova, it has title to the four lots and is entitled to possession thereof in view of its abandonment as a cemetery.

However, the district court found that there had been no dedication by Mrs. Córdova of the land belonging to her for public use as a cemetery. On the contrary, it held that the transaction pursuant to which the Municipality obtained possession of this land in the 1850's was an ordinary exchange between it and Mrs. Córdova under § 1428, Civil Code, 1930 ed. It therefore concluded that the Municipality had an unfettered title to these lots and entered judgment in its favor.

■■ The corporation appealed, assigning three errors. In these errors the corporation renews its contention that it is the law of this jurisdiction that title to property dedicated to public use always remains in the donor and that abandonment of the public use to which the land is dedicated creates a right in favor of the donor or his successor in interest to regain possession of the land.[2] We find it unnecessary to

---

[2] Cf. McQuillin, Municipal Corporations, Revised ed., pp. 820–21, pp. 846–49; Annotations, 47 A.L.R. 1172, 1183; 70 A.L.R. 564; *Johnston* v. *Medina Improvement Club, Inc.*, 116 P.(2) 272 (Wash., 1941); *Tracy* v. *Bittle*, 112 S.W. 45 (Mo., 1908); *Prall* v. *Burckhartt*, 132 N.E. 280 (Ill., 1921); *Portland Baseball Club* v. *City of Portland*, 18 P.(2) 811 (Ore., 1933).

examine that question of law. To pass on it, we would first have to agree with the appellant that in 1850 Mrs. Córdova had in fact dedicated these lots to public use as a cemetery. But we think the district court was correct in rejecting that contention and in finding that the 1850 transaction was an exchange, and not a dedication to public use.

We synthesize the argument of the appellant that the 1850 transaction was a dedication to public use in this and the following three paragraphs. The reference in the *Acta* of 1850 to removal of the cemetery to "another point on the land of doña María Asunción Córdova" demonstrates that the existing cemetery was already on her property. This meant that the lady or her predecessor in interest had permitted the Municipality to use the site for a cemetery without ever divesting herself of title thereto. As Mrs. Córdova owned the land on which both the present and future cemeteries were located, the 1850 transaction could not have been a contract of exchange. Section 1428 of the Civil Code provides that "Exchange is a contract by which each of the contracting parties binds himself to give a thing *in order to receive another*." (Italics ours). But Mrs. Córdova was receiving nothing, as she already owned the land on which both the present and future cemeteries were located. Therefore she was donating it for dedication to public use rather than exchanging it in return for property which she did not already own.

The *Acta* of 1850 recites that doña María Asunción Córdova *cedes* to the Municipality three-fourths of a cuerda for a new cemetery, receiving as the only compensation for this *donation* the *site* of the existing cemetery. In receiving the site of the existing cemetery, Mrs. Córdova was not receiving the land on which it was already located. The latter already belonged to her. She was only gaining access to the site that had been utilized as a cemetery on her own land. And the so-called "compensation" was inoperative and unnecessary inasmuch as she could utilize the land, since it

belonged to her, once the Municipality abandoned the old cemetery.

The *Acta* of 1850 speaks of "cession" and "donation". These words involve a different juridical concept than "exchange". If the parties had intended an exchange, they would have used the terminology of exchange. The language they did use reveals a gift or dedication for use as a cemetery and not an exchange.

Mrs. Córdova originally owned a farm of ninety-six cuerdas on which both cemeteries were located. When she sold it to Manuel González Fernández, she did not deduct or segregate therefrom the portion utilized by the Municipality as a cemetery. Nor was any recordation of a segregation of these lots ever made in favor of the Municipality. And González paid the property taxes thereon in subsequent years. Mrs. Córdova therefore never divested herself of title to the four lots: they were merely dedicated by her to public use as a cemetery.

We have carefully examined the foregoing arguments, but have not found them convincing. The appellant offered no direct testimony that the land on which the old cemetery was located for a number of years prior to 1850 still belonged to Mrs. Córdova after it was constructed. It relies almost entirely on the somewhat ambiguous phrase in the *Acta* of 1850 that the cemetery was to be moved to "another point" on her land. This, standing alone, is insufficient to establish affirmatively that the land on which it was located still belonged to Mrs. Córdova after the old cemetery was established. This language in the *Acta*, used loosely by a layman, is equally consistent with an inference that the old cemetery had been located on land which originally but no longer belonged to Mrs. Córdova. If the reasoning of the appellant is to apply, it had first to demonstrate affirmatively that Mrs. Córdova still owned the land on which the old cemetery was located when the question of establishing a new cemetery arose in 1850. We are unable to conclude that this

was unmistakably shown by the language of the ·Acta of 1850.

Contrary to the appellant's contention, we think the use of the word "compensation" in the Acta of 1850 is significant. If the Municipality and Mrs. Córdova were merely agreeing to change the site of the cemetery from one tract belonging to her, already dedicated to public use, to another to be dedicated to the same public use, there would be no occasion to use the language of compensation. That she was to be "compensated" with the old land for delivering the land for the new site, bolsters our view that the old site did not, or at least no longer, belonged to her. If the old site already belonged to her, she would not be receiving it as "compensation".

If more be needed, other records of the Municipality involving this transaction demonstrate that this was an exchange rather than a gift for dedication to public use. The expediente shows that in 1849 the Municipality determined that the most appropriate site for the new cemetery was a piece of land belonging to Mrs. Córdova, which should be purchased or condemned. It likewise reflects that on October 8, 1850 Mrs. Córdova approached the Municipality to facilitate the transfer, speaking of "expediting this business deal". In an Acta of October 31, 1850 this phrase "expedite this business deal" is repeated. One generally does not use the word "business" in connection with a gift.

Finally, there is an Acta of 1854 showing that a petition of Mrs. Córdova for discontinuance of work on the new cemetery was denied "because since she agreed, in October, 1850 with the Board of Río Piedras to cede land belonging to her for the construction of the cemetery, leaving to the election of the board the site whereon it should be erected, it is not legal that she should now decline to carry out her agreement unless the land to be occupied exceeds three-fourths of a cuerda in compensation for the land actually occupied by the old cemetery which would remain at her disposal; And

I notify this to you, for your own knowledge and other purposes, giving notice that the work in the Cemetery which had been stopped as a result of the communication of doña Asunción Córdova should be continued." (Italics ours).

This opposition by Mrs. Córdova in 1854 tends to refute the theory of dedication and to show that the true nature of the 1850 transaction was a contract of exchange which she was trying in 1854 to set aside. Here as elsewhere throughout the entire *expediente* the *Actas* speak of "compensation" in connection with a "business deal". That is scarcely the terminology of a gift for purposes of dedication to public use.

The appellant argues that the reference in the *Acta* of 1850 to a "donation" points to dedication. But that word cannot be taken out of its context. The *Acta* speaks of "the only *compensation* for this donation. . ." And the *Acta* as a whole, together with the history of the transaction as revealed by the entire *expediente*, leaves no doubt in our mind that this was a business deal in which the parties exchanged land belonging to one of them in return for land belonging to the other party.

■ Moreover, even if we assume, as the appellant argues, that prior to the *Acta* of 1850 the Municipality owned only the "site" and not the "land" on which the old cemetery was then located, that was sufficient *causa* or consideration for a contract of exchange whereby the Municipality became the unconditional owner of the "land" for the new cemetery in consideration of its relinquishment of the old "site" to Mrs. Córdova.

■ Our conclusion is that the *Acta* of 1850 provided for an exchange between the Municipality and Mrs. Córdova as an ordinary business transaction whereby the Municipality obtained title to the four lots in controversy without any strings attached thereto. The Municipality was therefore entitled to use these lots for any other purpose or to sell them after their use as a cemetery ceased.

The judgment of the district court will be affirmed.